2013 VT 30

### Adam Michael Roberts v. University of Vermont and State Agricultural College

[70 A.3d 1058]

No. 12-206

Present: **Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Eaton, Supr. J., Specially Assigned**

Opinion Filed May 10, 2013

530

*Richard W. Kozlowski* of *Lisman Leckerling, P.C.*, Burlington, for Plaintiff-Appellant/Cross-Appellee.

*Jeffrey J. Nolan* and *Angela R. Clark* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee/Cross-Appellant.

¶ 1. **Robinson, J.** Plaintiff appeals from a superior court order affirming the University of Vermont's denial of his application for in-state tuition status. He raises a host of challenges to the court's ruling, arguing primarily that it was inconsistent with the court's finding that plaintiff was domiciled in Vermont. We affirm.

¶ 2. In 2007, plaintiff moved to Vermont to enroll as an undergraduate at the University of Vermont (hereafter "University" or "UVM"). He paid the out-of-state tuition rate through the first three years of his undergraduate studies, and first applied for in-state tuition status in June 2010. In his application he stated that, although he first came to Vermont to attend UVM, he chose to permanently relocate to Vermont because he loved the area and intended to reside in Burlington after graduating.

¶ 3. UVM denied the application, citing several pertinent provisions of UVM's In-State Status Regulations. Regulation 1 defines "domicile" as "a person's true, fixed, and permanent home," and states that "[i]t is the place at which one intends to remain indefinitely and to which one intends to return when absent." Regulation 3 states that a residence "established for the purpose of attending UVM shall not by itself constitute domicile." Regulation 4 builds on that, stating, "[a]n applicant becoming a student within one year of first moving to the state shall have created a rebuttable presumption that residency in Vermont is for the purpose of attending UVM and/or acquiring in-state status for tuition purposes." And Regulation 7 provides that "[r]eceipt of financial support by a student from his/her family shall create a

rebuttable presumption that the student's domicile is with his/her family, regardless of whether the student has reached the age of 18."

¶ 4. In his administrative appeal, plaintiff reiterated that he came to UVM because of the reputation of its premedical program and medical school, and he explained that during his freshman year he was accepted into a premedical program that leads to automatic acceptance to UVM medical school for students who complete the program. Plaintiff also explained that, although he needed only one more course to complete his graduation requirements, he was seeking in-state tuition status to enable him to take additional electives in the fall of 2010 and spring of 2011 to become "a more diversified medical school applicant." UVM denied his administrative appeal.

¶ 5. In November and December 2010 — the fall of his senior year — plaintiff applied to UVM medical school for the following academic year. Plaintiff submitted another application for in-state status in December 2010, this time in connection with courses he hoped to take in the spring of 2011. UVM denied that application for substantially the same reasons as the first application. Plaintiff did not enroll in courses in the spring.

¶ 6. Plaintiff submitted a third application in March 2011, indicating that it was for the purpose of taking one or two summer courses. In that application, plaintiff stated that, while he originally came to Vermont to attend UVM, his reason for permanently moving to Vermont was to work at the Burlington airport for Comair. Plaintiff also indicated that he received no financial support from his family and that he would be closing on the purchase of a house in Burlington in May 2011. Plaintiff was not at that time taking courses at UVM, but in April 2011 was accepted to begin medical school at the UVM College of Medicine (COM) in the fall of 2011. The UVM residency officer denied plaintiff's third application, and plaintiff filed an administrative appeal.

¶ 7. UVM's residency appellate officer upheld the residency officer's conclusion. The officer explained that, notwithstanding the various steps plaintiff had taken to demonstrate domicile in Vermont, given his acknowledgment that he came to Vermont on account of UVM's premedical program and medical school, his application to UVM COM in the fall of 2010, and the fact that he would be enrolling at UVM COM in the fall of 2011 — less than

a year from his completion of undergraduate studies at UVM — he had failed to rebut the presumption in Regulations 3 and 4 that he came to Vermont, and stayed in Vermont, for an educational purpose. The appellate officer also concluded that because plaintiff's father had provided him with some financial support and was listed as a co-purchaser of the Burlington house plaintiff was purchasing, the presumption in Regulation 7 that a student who receives financial support from family is domiciled with family also applied.

¶ 8. In connection with his enrollment at UVM COM in August 2011, plaintiff submitted his fourth application for in-state status. In his application, plaintiff asserted that Vermont was his permanent home, citing his part-time employment at the Burlington International Airport and payment of state income tax, banking and financial relationships in Vermont, his Vermont driver's license and voter registration, and his purchase of a home in Burlington. Plaintiff also claimed that he had been financially independent of his parents since the summer of 2010, and argued that he had no substantial connection to any other state. UVM's residency officer denied the application, and plaintiff filed an administrative appeal.

¶ 9. UVM's appellate residency officer issued a decision in October 2011, finding that plaintiff had not established by "clear and convincing evidence that [he] qualifi[ed] for in-state tuition." The officer explained that "[c]ommon-law domicile is itself not sufficient to establish eligibility for in-state tuition status at the University of Vermont." Implicitly acknowledging plaintiff's repeated statements that he intended to make Vermont his permanent home without regard to whether he was accepted at UVM COM, the officer observed: "[S]tatements from you . . . with regard to any future plans and intention related to Vermont domicile are not conclusive, and we must accept them with considerable reserve. Such declarations have little weight when they conflict with actual facts which are of greater evidential value."

¶ 10. Reviewing the record, the appellate officer cited plaintiff's own acknowledgment in an earlier application that he came to Vermont with the plan and intent to attend UVM as an undergraduate and then enter UVM COM; the fact that plaintiff sought to take additional electives after completing his undergraduate requirements for the purpose of becoming "a more diversified medical school applicant"; and the fact that in April 2011 plaintiff

was accepted and enrolled in classes for the fall 2011 semester at the medical school, less than one year after completing his undergraduate studies. While acknowledging that plaintiff had taken certain "steps to establish domicile," in light of the facts cited above, the appellate officer found that plaintiff had "displayed a clear educational intent and purpose in coming here and for staying in Vermont" and had not rebutted the presumptions in Regulations 3 and 4, and thus did not qualify for in-state status for tuition purposes.

¶ 11. The officer further found that, while plaintiff asserted that he was financially independent of his parents, the evidence was insufficient to substantiate the claim. In this regard, the officer noted that plaintiff had acknowledged the receipt of financial support from his father in a previous application; that plaintiff's education trust fund had increased in the past year from $3000 to $50,000 with no indication as to the source of the funds; that plaintiff's father was listed as a co-purchaser on the contract of sale and co-borrower on the loan for the purchase of plaintiff's $330,000 Burlington residence; and that plaintiff's stated annual income for the past two years of between $13,000 and $15,000 was insufficient to fund the home purchase and trust fund, not to mention the costs of plaintiff's education.[1] Accordingly, the officer found that the Regulation 7 presumption of domicile with plaintiff's family also applied.

¶ 12. Plaintiff appealed the University's decision denying his fourth application to the superior court, pursuant to Vermont Rule of Civil Procedure 75. UVM filed a motion to dismiss or, in the alternative, for partial summary judgment. Plaintiff filed a response, and the court thereafter issued a written ruling on the merits upholding the University's decision. The court concluded that the University had misapplied Regulation 4, and that the presumption reflected in that provision did not apply because plaintiff had lived in Vermont for more than one year prior to applying to UVM COM. The court further concluded that there was no support in the record for the appellate officer's determination plaintiff had not rebutted the presumption reflected in Regulation 7. The court concluded that plaintiff had "established a

---

[1] Although the administrative officer described the residence as a "$330,000 home," the record shows that the mortgage loan secured by plaintiff and his father was for $332,800, but the purchase price of the home was actually $416,000, including a $20,000 deposit.

domicile in Vermont," but nevertheless found that it was for the purpose of attending UVM, so that plaintiff was not entitled to in-state tuition status.

¶ 13. Plaintiff has appealed from the court's decision denying his application, and the University has cross-appealed the court's construction and application of Regulations 4 and 7.

¶ 14. In this Rule 75 appeal, the trial court's review of UVM's decision was restricted to the administrative record to determine whether there was "any competent evidence" to support the University's findings, *Ketchum v. Town of Dorset*, 2011 VT 49, ¶ 14, 190 Vt. 507, 22 A.3d 500 (mem.) (quotation omitted), while the court exercised independent review of any substantial questions of law affecting the merits. *Molesworth v. Univ. of Vt.*, 147 Vt. 4, 7, 508 A.2d 722, 723 (1986). On appeal to this Court, we consider the case "under the same standard as applied in the intermediate appeal," upholding the University's findings "unless clearly erroneous." *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999). Although conclusions of law, as noted, "are not so protected," we "do accord deference" to the interpretation of statutes and rules by the agency charged with their execution. *Id.*

¶ 15. We review the University's decision in light of the applicable statutory and regulatory scheme. The Legislature has provided for reduced tuition charges for certain students in order "to provide greater educational opportunities for the youth of Vermont." 16 V.S.A. § 2282(a). To that end, the Legislature authorized the trustees of UVM to define eligibility for reduced tuition charges, and directed that the definition include, without limitation, the following:

> (1) reasonable durational domicile requirements;

> (2) provision that a residence established for the purpose of attending an education institution by either the person seeking reduced tuition or another shall not by itself constitute residence for the purposes of this section;

> (3) requirement of such other indicia of permanent residence as said trustees shall deem proper.

*Id.* § 2282(c); see also *id.* § 2282a(a) ("Enrollment at an institution for higher learning, or presence within the state for the purposes of attending an institution of higher learning, shall not by itself

constitute residence for in-state tuition purposes.").[2] In accordance with this directive, UVM adopted regulations governing eligibility for in-state tuition status, including those set forth above.[3] *Supra,* ¶ 3.

■ ¶ 16. UVM's regulations for determining eligibility for in-state tuition status are not synonymous with common-law domicile. As we have previously explained:

> [D]omicile is . . . a place where a person lives or has his home, to which, when absent, [the person] intends to return and from which [he or she] has no present purpose to depart. To change domicile, there must be a relocation to the new residence and continued dwelling there, coupled with an intention of remaining there indefinitely; neither physical presence alone nor intention alone is sufficient to effectuate a change of domicile.

*Conley v. Crisafulli,* 2010 VT 38, ¶ 6, 188 Vt. 11, 999 A.2d 677 (quotation and citation omitted).

■ ¶ 17. By contrast, pursuant to the Legislature's express directive, UVM's regulations require that "a student must reside in Vermont continuously for one year prior to the semester for which in-state status is sought." UVM In-State Status Regulations, Regulation 2. This regulation applies even if a student is domiciled in Vermont pursuant to the common law understanding from his first day. Moreover, UVM's regulations establish a host of presumptions and criteria that do not ordinarily apply in a common-law determination of domicile. In addition, the standard of proof

---

[2] The terms "residence" and "residency" are often used to describe two very different concepts. "Residence" sometimes refers to the place where someone lives, and connotes physically dwelling in Vermont. On the other hand, "residency," and "Vermont resident" are sometimes used as legal conclusions: the terms signify that a person qualifies for in-state status with respect to a particular state benefit or responsibility. See, e.g., *Conley v. Crisafulli,* 2010 VT 38, ¶ 5, 188 Vt. 11, 999 A.2d 677 ("Residency, for purposes of divorce jurisdiction, is more than mere presence within the state.") (quotation omitted); *Huddleston v. Univ. of Vt.,* 168 Vt. 249, 253-54, 719 A.2d 415, 419 (1998) (using "residence" and "residency" to mean eligibility for in-state tuition status). Wherever possible, we avoid use of these terms to avoid confusion.

[3] The day before rejecting plaintiff's fourth application, UVM amended its regulations. UVM applied the pre-amendment version of its regulations, quoted above, in reviewing and denying plaintiff's application, and we likewise use the language of that version of the regulations in considering this appeal.

for establishing eligibility for in-state status is higher than the usual standard for proving domicile. See UVM In-State Status Regulations, Regulation 10 (requiring that student seeking in-state status establish eligibility by clear and convincing evidence); see also *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 254, 719 A.2d 415, 419 (1998) (upholding University's authority to adopt clear and convincing standard in connection with in-state tuition eligibility cases). To the extent that UVM's regulations use the term "domicile," we understand that term within the context of its regulatory scheme rather than as common-law domicile.

¶ 18. With that in mind, we consider plaintiff's arguments. Plaintiff first asserts that the trial court found "that [plaintiff] ha[d] established a domicile in Vermont." This finding, plaintiff argues, is determinative of his eligibility for in-state tuition status. Moreover, the trial court mistakenly applied an amended version of Regulation 3 which, plaintiff argues, was not only inapplicable, but unreasonable, inconsistent with enabling legislation, and unconstitutional under Chapter I, Article 7 of the Vermont Constitution and the Fourteenth Amendment of the United States Constitution.

¶ 19. In light of the review standards summarized above, we conclude that plaintiff's reliance on the superior court's "finding" is misplaced. For our purposes here, the critical findings are those of the University, not the trial court. UVM was the adjudicator of the facts in this matter, and the record is clear that it employed the original version of Regulation 3, which both parties agree governed plaintiff's application.[4] Moreover, UVM made no finding as to plaintiff's common-law domicile, but rather concluded on the basis of its review of the record that plaintiff did not establish by clear and convincing evidence that he was eligible for in-state tuition.

¶ 20. The record contains ample competent evidence to support the University's determination. While UVM acknowledged that plaintiff had taken certain steps to establish domicile, the University found under Regulation 3 that plaintiff had "displayed a clear educational intent and purpose in coming here *and for staying in* Vermont." The University cited as persuasive in this

---

[4] For this reason, we do not reach plaintiff's various arguments that Regulation 3, as amended, is inapplicable, exceeds UVM's statutory authority, or violates state and federal constitutions.

regard plaintiff's admission in an earlier application for in-state status that he came to Vermont with the plan and intent not only to obtain an undergraduate degree, but thereafter to attend UVM COM, as well as the fact that he applied to the medical school while still enrolled as a undergraduate, and enrolled as a medical student within one year after completing his undergraduate coursework. These facts are sufficient to support the University's conclusion. See *Spielberg v. Bd. of Regents*, 601 F. Supp. 994, 1000-01 (E.D. Mich. 1985) (holding that student who had obtained state driver's license, registered to vote, paid state taxes, and opened local bank account failed to overcome presumption that one who comes for purpose of attending university was ineligible for in-state tuition); *Michelson v. Cox*, 476 F. Supp. 1315, 1320-21 (S.D. Iowa 1979) (upholding university's denial of in-state tuition, based on presumption that student was in state for education purposes, despite evidence that he had registered to vote, obtained state driver's license, and paid local property taxes); *Smith v. Bd. of Regents*, 874 S.W.2d 706, 710 (Tex. App. 1994) (upholding university's finding that, despite evidence of student's in-state driver's license, voter registration, and employment, she had not rebutted presumption that she was not state resident because she came for purpose of attending university).

¶ 21. In addition, the University relied on Regulation 7, which provides that the "[r]eceipt of financial support by a student" from his or her family creates a rebuttable presumption that the student's domicile is with his or her family. Although plaintiff claimed that he was financially independent, the University was unpersuaded, noting that he had acknowledged the receipt of financial support in a previous application for in-state status; that plaintiff's educational trust fund had increased during the previous year from $3000 to $50,000 with no indication as to the source of the funds; that plaintiff's father was listed as the co-purchaser on the contract of sale and co-borrower on the loan for the purchase of plaintiff's residence; and that plaintiff's annual income for the past two years of approximately $13,000 to $15,000 was insufficient to fund the home purchase, trust fund, and education costs. We cannot say that the University's conclusion that the presumption in Regulation 7 applied was unsupported by its findings or the underlying evidence. Moreover, in light of the above evidence regarding plaintiff's educational intent in coming to and remaining in Vermont, we cannot conclude that plaintiff rebutted this pre-

sumption as a matter of law and do not endorse the trial court's conclusion that there was "simply no support" for UVM's finding concerning Regulation 7. See *Ketchum*, 2011 VT 49, ¶ 18 (rejecting plaintiffs' claim that "their opinions and evidence should have been weighed more heavily" by the local agency, and upholding its resolution of "the competing considerations").

¶ 22. We recognize that much of the evidence presented by plaintiff is consistent with an intent to remain in Vermont beyond his schooling, but we cannot conclude that, as a matter of law, that evidence demonstrates satisfaction of the requirements for in-state tuition by clear and convincing evidence. Many of plaintiff's actions are typical of students in general — those who intend to remain in Vermont, and those who do not. As a federal district court explained in evaluating the University of Iowa's determinations regarding eligibility for in-state tuition:

> To accept plaintiff's argument would require the University to reclassify as a resident every student who, after attending the University for a year, makes a self-serving declaration that he intends to reside in Iowa permanently and performs a series of "objective" acts, some of which are required by law and all of which are customarily done by some nonresident students who do not intend to remain in Iowa after graduation. This would, in effect, create a presumption that any such student *is* a bona fide Iowa resident, thus seriously jeopardizing the University's nonresident tuition program and consequently its entire financial structure.

*Michelson*, 476 F. Supp. at 1320 (original emphasis); see also *Spielberg*, 601 F. Supp. at 1000-01 ("[A]ll of these indicia of domiciliary intent are readily established by students having no intention to remain in Michigan beyond graduation. . . . While it is true that the evidence plaintiff offered is consistent with an intent to remain in Michigan, it is equally consistent with an intent to leave Michigan upon graduation.").

¶ 23. We understand that the burden on a student who comes to Vermont to attend school and then, during the course of schooling, becomes a Vermont domiciliary and seeks in-state tuition status is a heavy one. But, as we have previously concluded: "It is wholly consistent with the purpose of the statute for UVM to erect significant barriers to establishing in-state resi-

dency, in view of the Legislature's twice-expressed concern that Vermont residency alone should not automatically confer in-state status. The hurdle to in-state tuition is high in order to effectuate the purpose of the statute, which is to provide greater educational opportunities to the youth of Vermont at the state university." *Huddleston*, 168 Vt. at 254, 719 A.2d at 418-19; see also *Vlandis v. Kline*, 412 U.S. 441, 453-54 (1973) (recognizing a state's authority to establish "reasonable criteria" to ensure students "who have come there solely for educational purposes, cannot take advantage of the in-state rates"); *Michelson*, 476 F. Supp. at 1320 ("It is true that students who do intend to make Iowa their home may not be able to overcome the presumption of nonresidence, but it does not appear possible to draft a regulation that would preserve an effective nonresident tuition scheme without injustice to some individuals. Rules that apply to all are rarely, if ever, without anomalies.").

¶ 24. For the above reasons, we affirm the trial court's affirmance of the University's conclusion that plaintiff did not qualify for in-state tuition status.[5]

¶ 25. We briefly address the University's cross-appeal. To the extent the University challenges the trial court's conclusion that, as a matter of law, plaintiff overcame the presumption in Regulation 7 that he was domiciled with his family, our analysis above supports the University's position.

¶ 26. We likewise reject the trial court's analysis of Regulation 4. That regulation provides that "[a]n applicant becoming a student within one year of first moving to the state" creates a rebuttable presumption that "residency in Vermont is for the purpose of attending UVM and/or acquiring in-state status for tuition purposes." The trial court found that the rule had "no application" because plaintiff had lived in Vermont for more than one year before applying to UVM's medical school. As the University correctly notes, however, the one-year period is plainly measured from plaintiff's "first moving" to Vermont, not from his "applying" to the medical school, and therefore applied in this

---

[5] Plaintiff asserts that he was not given a sufficient chance to brief the merits of the case before the trial court issued its ruling. Because we are effectively reviewing the University's findings and legal conclusions, rather than the trial court's, and because plaintiff has had the opportunity to fully brief its arguments for this Court, any error in the trial court's process was harmless.

case. The court was concerned that Regulation 4 could "create a permanent obstacle" to anyone whose initial move to Vermont was for the purpose of attending UMV. The presumption is expressly rebuttable, however, and nothing in this record suggests that an applicant who is found to have presented sufficient evidence to rebut the presumption would be similarly denied.

*Affirmed.*