2014 VT 118

## Pauline Guntlow and Richard Winterkorn v. Board of Abatement, Town of Pownal

[112 A.3d 732]

No. 14-139

Present: **Reiber, C.J., Skoglund and Robinson, JJ., and Maley and Griffin, Supr. JJ., Specially Assigned**

Opinion Filed November 7, 2014

Motion for Reargument Denied December 17, 2014

*Paul S. Gillies* of *Tarrant, Gillies, Merriman & Richardson,* Montpelier, for Plaintiffs-Appellants.

*Peter V. Holden,* Bennington, for Defendant-Appellee.

¶ 1. **Robinson, J.** Two taxpayers appeal a decision from the trial court affirming the decision of the board of abatement of the Town of Pownal denying their request for tax abatement. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2. Taxpayers sought abatement of the property taxes on several contiguous properties for the years 2005 through 2011. Taxpayers pressed their claims before the town abatement board, appearing three times before that body. In January 2012, the board held a hearing and denied taxpayers' request, but later determined that it had lacked a quorum. In a second hearing, in March 2012, the board again voted to deny taxpayers' request. Taxpayers appealed that denial to the Superior Court, Civil Division. The trial court noted that the board's meeting minutes, which simply stated that the board had denied taxpayers' request, did not explain the reasons for the board's denial enough to enable the court to decide the case, and did not satisfy the statutory requirement that the abatement board "state in detail in writing the reasons for its decision." 24 V.S.A. § 1535(c). The court remanded the matter to the abatement board, directing that it either detail in writing the reasons for its decision or hold a new, curative hearing.

¶ 3. In August 2013, the tax abatement board held its third hearing, the one at issue here. Taxpayers' request for tax abatement was based on 24 V.S.A. § 1535(a)(4), which provides that the board "may abate in whole or part taxes, interest, or collection fees" in cases in which there was a "manifest error or a mistake of the listers." Taxpayers made several arguments.

¶ 4. First, taxpayers argued that the Town's delinquent-tax collector erred in assessing interest and fees on the entirety of an overdue tax bill after refusing to accept a partial payment that taxpayers had proffered in 2011. Taxpayer Guntlow explained that she sought to pay taxpayers' overdue 2010 property tax for her homestead, one of several properties they owned. The delinquent-tax collector said that taxpayers could not specify payment for an individual property because their property had just been reclassified from a single contiguous property to five individual properties, and that any payment made would be applied to all the properties. Although they initially opted not to pay the bill on that basis, taxpayers subsequently paid the overdue bill, directing on the check that the payments be applied to the homestead property — which they were particularly anxious to protect from tax sale.

¶ 5. Taxpayers further explained that, on advice of counsel, they took legal steps to legally change the property classification for the homestead property, and subsequently sought to pay the 2011 property-tax bill for that specific property. Again, the tax collector said that any money paid by taxpayers would be applied to all of the properties. Only after the intervention of counsel did the tax collector accept a partial payment allocated to the homestead property. Nonetheless, taxpayers were assessed interest and penalties on overdue taxes, including the amount of the payment they had offered to make when due. Taxpayers sought abatement in the amount of $866.50, the interest and penalties they said they were assessed on account of the tax collector's refusal to accept the partial payment allocated to a specific property.

¶ 6. Second, taxpayers argued that the listers had erroneously and without notice to taxpayers reclassified their property for several years, resulting in improperly inflated tax bills. Taxpayer Guntlow explained that following her discussion with the tax collector in which she first learned about the distinction between properties classified as individual and properties classified as contiguous, she investigated the matter further. She learned that

their various properties had been classified as contiguous in 2004, but were switched to individual sometime in 2005 — without, taxpayers said, any explanation or notice — and remained individually classified until late August 2011, when they were reclassified back to contiguous.

¶ 7. Taxpayers argued to the board that this reclassification without explanation or notice, which significantly raised the taxes and fees assessed, was arbitrary and violated state law. Taxpayers asserted that because the property was contiguous and under common ownership, it should have been classified as contiguous all along, and that the individual reclassification over multiple years violated 32 V.S.A. § 4152(a)(3), which mandates that every town's "grand list" contain a "brief description of each parcel of taxable real estate in the town" and defines "parcel" as "all contiguous land in the same ownership, together with all improvements thereon."

¶ 8. Third, the taxpayers argued that one sewer-bond payment is applied to each parcel. Because their contiguous property had been wrongly classified as multiple parcels, taxpayers were charged for multiple sewer bonds over multiple years, for a total overcharge of $1,342.

¶ 9. Fourth, taxpayer Guntlow explained that because the properties were misclassified as individual, a .66-acre leach field was assessed at $10,400 from 2005 to 2010, rather than the $700 value assigned to the leach field once the properties were reclassified as contiguous, resulting in an overpayment of $1,197.

¶ 10. Fifth, taxpayer Guntlow explained that a house site up to two acres around a house is subject to an exemption in the taxation calculus that was unavailable to taxpayers during the years when their property was misclassified.

¶ 11. Finally, taxpayers presented statistical evidence that they argued showed that the town listers had failed to equalize their property assessments with others in their town, and that this failure amounted to a manifest error or mistake of the listers. This was a major focus of taxpayers' detailed presentation at the abatement hearing. In it, taxpayers argued that their property was not appraised at a uniform rate, and thus violated the requirement of proportional contribution. Taxpayers did not argue that the property was not appraised at fair-market value; instead, they argued that there was a failure to equalize such that the ratio of listed value to market value of their property was

disproportionate to the ratio of listed value to fair-market value of comparable properties. In support of their claim, taxpayers presented a computer-aided statistical study conducted by a sophomore at Williams College, based on a full town-wide reappraisal in 2011.

¶ 12. After taxpayers presented their case, neither the listers nor any other party presented evidence or argument concerning taxpayers' claims, and despite an invitation from a lister, nobody on the board of abatement asked the listers any questions. Instead, the board voted to enter into executive session "for deliberation."

¶ 13. Taxpayers requested that the listers (who sit on the board of abatement) recuse themselves from voting, asserting that they had a conflict of interest because their own claimed errors were at issue in the case. The listers agreed to abstain from voting. However, in order to maintain a required quorum, the abatement board members wanted to have the listers present in the executive session. Taxpayers initially objected to that procedure, but once they were informed that the listers were needed for quorum purposes and that the board could not vote or make any decisions in executive session, taxpayers ultimately consented to the listers' participation.

¶ 14. Following its deliberation, at a continued abatement hearing several days later, the board rendered its decision. The minutes of that meeting address each of the six issues in turn, and the corresponding explanations offered by the board[1]:

> 1. Did the Pownal Delinquent Tax collector err by refusing to accept Guntlow's tax payment on its due date; then demanding interest and penalties? . . . No, because the delinquent tax collector could not take a portion of payment towards one parcel on a tax bill, being in the hands of the attorney.
>
> 2. Did Pownal [listers] err, when in 2005 they arbitrarily changed . . . Guntlow's Contiguous Property Classification from one parcel to five Individual parcels? . . . No, it was

---

[1] The included text reflects the question presented and the board's answer and explanation. The omitted text reflects the actual motions and votes.

not proven by the appellant that the [listers] had err[ed].

3. Did Pownal [listers] err, from 2005-2010, using the erroneous property classification Individual which resulted in:

a.) Additional Sewer Bond fees . . . since this is a municipal repayment based on a parcel not dwelling and the appellant not being treated equitably. The appellant is to be refunded in the amount of $1,342.81.

b.) Increased Leach field property assessments . . . were addressed by the [listers] [and] had been adjusted at grievance in 2011.

c.) Elimination of the House site allocation allowance for the Guntlow property? . . . [T]he elimination of the house site is based on the income and is handled by the State.

4. Did the Pownal [listers] err by not equalizing four of Guntlow's properties to all other town properties, from 2005-2010? . . . No, because the same cost table/schedule were used to value the appellant's property as were to the rest of the parcels in town.

¶ 15. Taxpayers appealed the board's decision to the civil division under Vermont Rule of Civil Procedure 75, which governs abatement appeals. *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶¶ 6, 10, 191 Vt. 76, 38 A.3d 1133. Taxpayers renewed their arguments on the merits of the abatement request, and argued that the board of abatement did not provide sufficient explanation of its reasons for denying their request. In addition, they challenged the listers' failure to recuse themselves from the entire deliberative process. Reviewing the matter on the record, the trial court affirmed the board of abatement's decision. Taxpayers appealed.

¶ 16. On appeal, taxpayers argue that (1) the participation of the listers in the deliberations was improper because the abatement request was based upon a claim of "manifest error or a mistake of the listers"; (2) the board improperly deliberated in executive session; and (3) the board's decision did not meet the statutory requirement that it "state in detail in writing the reasons for its decision."[2]

¶ 17. "Rule 75 places the lower court in the position of an appellate court in reviewing administrative agency decisions," *Garbitelli*, 2011 VT 122, ¶ 7, and our standard of review is identical here. *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999) ("Where there is an intermediate level of appeal from an administrative body, we review the case under the same standard as applied in the intermediate appeal.").

¶ 18. "A court reviewing governmental action," including a denial of a tax-abatement request, is "normally limited to answering legal questions raised by the factual record developed in the administrative proceeding." *Garbitelli*, 2011 VT 122, ¶ 6. "The superior court's review of [an abatement] board's decision is 'necessarily narrow.' " *Murray v. City of Burlington*, 2012 VT 11, ¶ 14, 191 Vt. 597, 44 A.3d 162 (mem.) (quoting *In re Town of Bennington*, 161 Vt. 573, 574, 641 A.2d 1331, 1332 (1993) (mem.)). Since a tax-abatement decision is entirely discretionary, an appellate court reviews it for abuse of discretion. *Garbitelli*, 2011 VT 122, ¶ 14. As we have previously cautioned, "a taxpayer's request for abatement is not a substitute for a property tax appeal." *Murray*, 2012 VT 11, ¶ 14. On questions of fact, we examine "the administrative record" — not the record of the superior court — "to determine whether there was 'any competent evidence' to support the [agency's] findings"; by contrast, we "exercise[ ] independent review of any substantial questions of law affecting the merits." *Roberts v. Univ. of Vt.*, 2013 VT 30, ¶ 14, 193 Vt. 529, 70 A.3d 1058 (citation omitted).

---

[2] Taxpayers' brief also asks whether there was manifest or obvious error by the listers. Although taxpayers' brief mentions the merits — the asserted manifest or obvious errors by the listers — the brief does not address those claims with any specificity, and at oral argument counsel indicated that taxpayers' appeal rests on their procedural claims. Accordingly, we do not address the merits of the board of abatement's responses to each of the questions posed by taxpayers.

## I. Participation of Listers in Deliberations

¶ 19. By statute, a town board for the abatement of taxes is composed of the listers, the town treasurer, and the board of civil authority, which is made up of the town clerk, selectboard members, and justices of the peace. 24 V.S.A. §§ 801, 1533. In their petition for a tax abatement to the board, taxpayers challenged the decision of the listers as being "manifest error or a mistake of the listers," *id.* § 1535(a)(4), which is one of the seven bases upon which a tax abatement board "may abate in whole or part taxes, interest, or collection fees." *Id.* § 1535(a). Both parties acknowledge that such a challenge places listers in an awkward situation, "where they are put in the position of defending their own actions while reviewing the same." For that reason, and at taxpayers' request, listers agreed not to vote on taxpayers' request.[3]

¶ 20. The quorum requirement for the board of abatement provides that the act of a majority of a quorum at a meeting shall be treated as the act of the board. 24 V.S.A. § 1533. However, this quorum requirement need not be met if the town treasurer, a majority of the listers, and a majority of the selectboard members are present at the meeting. *Id.* When the board's authority rests on a quorum, the listers are not necessarily required to be part of that quorum. But where the board's authority to act rests on the alternative — presence of the treasurer, a majority of the selectboard members, and a majority of the listers — the presence of a majority of listers is necessary to make a quorum.

¶ 21. ■ In this case, the board indicated to taxpayers that a majority of the listers had to be present to make a quorum. For that reason, the board proposed to taxpayers that two listers be present during the deliberation, but not vote. Taxpayers initially objected that the presence of the recused listers during the deliberation would be inconsistent with their recusal, but after discussion with the board about the likelihood that the departure of the listers would defeat a quorum and essentially "shut down" the proceeding, taxpayers withdrew their objection to the listers being present during the deliberation. In doing so, taxpayers waived any objection to the listers' participation in the executive

---

[3] We need not and do not decide whether the listers were required to abstain from voting.

session, and we need not consider it. *In re Denio*, 158 Vt. 230, 240, 608 A.2d 1166, 1172 (1992) ("To the extent appellants failed to object before the Board, they have waived their objection.").

## II. Use of Executive Session

¶ 22. The general public policy of the state, expressed in the Vermont open-meetings statute, is that meetings of public bodies should be open to the public. 1 V.S.A. §§ 310-312. "[D]elibera-tions . . . in connection with a quasi-judicial proceeding" are excluded from the open-meetings statute. 1 V.S.A. § 312(e). " 'De-liberations' means weighing, examining and discussing the reasons for and against an act or decision, but expressly excludes the taking of evidence and the arguments of parties." *Id.* § 310(1). Both parties acknowledge that real property tax-abatement pro-ceedings are quasi-judicial. *Id.* § 310(5)(B); *Garbitelli*, 2011 VT 122, ¶ 9; *Aiken v. Malloy*, 132 Vt. 200, 215, 315 A.2d 488, 497 (1974).

¶ 23. ▮ Taxpayers argue that because the open-meetings law does not apply to deliberations in quasi-judicial proceedings in the first place, the board's invocation of "executive session" was unnecessary and improper. Rather than voting to go into executive session, taxpayers say, the board could have, and should have, simply retired to deliberate privately. Taxpayers concede that the board's entry into "executive session" was functionally the same as the private deliberations they were entitled to have, and that the board's asserted deviation from state law is immaterial. They raise the argument to demonstrate what they perceive to be "the rough approach" that the board took to taxpayers' claims. We agree with taxpayers that any technical nonconformity with state law associ-ated with the label applied to their deliberation is immaterial.

## III. Statement of Reasons for Decision

¶ 24. The statute applicable to decisions of boards of abatement requires the board to "state in detail in writing the reasons for its decisions." 24 V.S.A. § 1535(c). This Court has not previously considered the level of detail required by this provision.

¶ 25. Our most closely analogous decision was in *Harris v. Town of Waltham*, in which we considered the level of detail required by a similar statute in a board of civil authority decision in a tax appeal. 158 Vt. 477, 613 A.2d 696 (1992). In that case, the

taxpayers challenged the appraisal of some of their land on the ground that all of their land had been valued at $160 per acre, but they had conveyed the most valuable parcel from that land. That more valuable parcel, and the parcel they retained, were both valued at $160 per acre, leading taxpayers to conclude that their remaining land was overvalued. *Id.* at 478, 613 A.2d at 697. The BCA rejected taxpayers' appeal, stating, "Appeal denied. Assessment for land is similar to assessments of surrounding land." *Id.* (quotation marks omitted).

¶ 26. This Court concluded that under the circumstances, the BCA's explanation was adequate under the statute providing that if the BCA did not within fifteen days certify in writing its notice of decision, "with reasons," 32 V.S.A. § 4404(c), the prior year's grand list of properties remains in place. In reaching its decision, the Court considered several factors. First, the applicable statute had previously required the BCA to "certify in writing its findings in the premises," *id.* (1982), and this Court had held in two cases that the requisite findings were absent or inadequate, such that the presumptive continuation of a prior year's grand-list assessment stood. *Harris*, 158 Vt. at 481, 613 A.2d at 698 (citing *Hojaboom v. Town of Swanton*, 141 Vt. 43, 442 A.2d 1301 (1982), and *Punderson v. Town of Chittenden*, 136 Vt. 221, 388 A.2d 373 (1978)). But following these decisions, the Legislature had amended the statute to eliminate the reference to "findings," and instead simply call for "reasons." *Id.* The Legislature also amended the trigger for holding over the prior year's grand list assessment to "substantial compliance" with the notice-and-reasons requirement. *Id.* at 480-82, 613 A.2d at 698-99. We concluded that the Legislature intended to overrule our two prior decisions, at least in part, and to dial back the level of statutorily required detail required in a decision. *Id.* at 481, 613 A.2d at 698.

¶ 27. Second, this Court was cognizant of the reality that boards of civil authority are made up of volunteer citizens who decide these cases in short timeframes. *Id.* at 482 n.3, 613 A.2d at 699 n.3. In this context, it is simply unrealistic to expect an enumeration of reasons as detailed as a court or administrative agency would be expected to provide.

¶ 28. Third, the reason offered by the BCA in that case was directly responsive to the only argument made by the taxpayers. Since the taxpayers' sole argument was that the taxpayers had been discriminated against compared to certain other named

landowners, the statement that the taxpayers' assessment "is similar to assessments of surrounding land" was a sufficient explanation to comply with the statute. *Id.* at 482, 613 A.2d at 699 (quotation marks omitted). As the Court explained, "the sophistication of the BCA's statement matches the sophistication of the taxpayers' appeal." *Id.* at 482 n.3, 613 A.2d at 699 n.3.

¶ 29. Finally, under the statutory regime in effect at the time, taxpayers' rights were fully protected by a de novo appeal to the State Board of Appraisers. *Id.* at 482, 613 A.2d at 699.

¶ 30. In this case, we have a statute that calls not merely for "reasons," but requires the board to "state in detail in writing the reasons for its decision." In contrast to the statute governing tax appeals in *Harris*, this Legislature has not amended the statute to dial back the expectations placed upon boards of abatement, and there is no de novo review process that protects taxpayers' rights. The Legislature has expressly called for a statement of the reasons for the board of abatement's decision "in detail." 24 V.S.A. § 1535(c). These factors support the imposition of a higher standard in the abatement context than applied by this Court in *Harris*.

¶ 31. ■ On the other hand, the composition of the board of abatement is quite similar to that of the board of civil authority; the same concerns about the sophistication and reasonable expectations of a local, volunteer board that this Court discussed in *Harris* come into play in this case. Moreover, the broad discretion enjoyed by a board of abatement weighs in favor of more modest expectations of the board's explanations. See *Garbitelli*, 2011 VT 122, ¶ 14 (noting that boards of abatement have broad discretion to grant or deny abatement requests, and holding that abatement statute "allows the Board to abate taxes, but does not require it to do so even if the taxpayer falls within one of the categories allowing for abatement").

¶ 32. ■ With these considerations in mind, we reach the following conclusions. A board of abatement's decision must provide sufficient explanation to "indicat[e] to the parties, and to an appellate court, what was decided and upon what considerations." *Punderson*, 136 Vt. at 225, 388 A.2d at 376 (citations omitted). The writing need not be lengthy, exhaustive, or legalistic, and need not satisfy the standards we would apply to a trial court's findings. But it must address the arguments raised by the applicant. See *Harris*, 158 Vt. at 481, 613 A.2d at 699. The more detailed and

clear a taxpayer's own presentation, the greater the board's duty to respond in kind. See *id.* at 482 n.3, 613 A.2d at 699 n.3.

¶ 33. ■ With these considerations in mind, we consider the board's explanations in support of its decision. First, with respect to the taxpayers' argument that the delinquent-tax collector wrongly declined to accept a payment allocated to a specific property and then unfairly charged interest and penalties on that late payment, the board declined the abatement request "because the delinquent-tax collector could not take a portion of payment towards one parcel on a tax bill, being in the hands of the attorney." This explanation may or may not reflect an accurate understanding of the law, but it does provide the parties, and a reviewing court, an understanding of the considerations that animated the board's decision on this question. Had this Court been asked to review the merits of the board's determination on this question, we would have been able to evaluate whether the law allows or requires the tax collector to take a portion of payment towards one parcel on a tax bill, and could have ruled accordingly. The board's explanation on this point satisfies the requirements of 24 V.S.A. § 1535(c).

¶ 34. ■ With respect to taxpayers' argument that the listers improperly and without notice reclassified their property to an inapplicable and less advantageous status, the board stated, "No, it was not proven by the appellant that the Listers had erred." Especially given that the only information presented to the board on this point was from taxpayers, who supported their claim with reference to documents and legal citations, this response does not meet the above test. It amounts to "you are wrong," without any explanation why. Taxpayers' presentation was sufficient to raise a serious question of manifest error, and they are left to wonder what aspect of their position was unpersuasive to the board, or whether the board understood it at all. Likewise, a reviewing court has no basis for determining whether the board's decision fell within its broad discretion, or whether it amounted to a failure to exercise or an abuse of its discretion. *Garbitelli*, 2011 VT 122, ¶ 14 ("[W]e review . . . decision[s] denying abatement for abuse of discretion.").

¶ 35. With respect to the taxpayers' arguments that they had unwittingly paid for a .66-acre leach field as if it was an individual property, causing increased assessments from 2005 to 2010, the

board responded, "the increased leach field property assessments were addressed by the [listers] [and] had been adjusted at grievance in 2011." This response reflects that the town agreed to adjust taxpayers' 2011 tax bill on account of the leach-field issue, but does not in any way address the years 2005 to 2010. In that respect, it amounts to a statement of the board's decision, but not an explanation of the reason. That is not to say that the board is required to abate the challenged taxes for these years, but it must provide a basic statement of the considerations that underlay its rejection of taxpayers' request.

¶ 36. In rejecting the request for abatement on account of the foregone house-site allowance, the board wrote, "the elimination of the house site is based on the income and is handled by the State." Again, the board's understanding of the law may or may not be correct, but the writing does inform taxpayers, and any reviewing court, of the considerations underlying the board's rejection of taxpayers' argument on this basis. A reviewing court could consider the accuracy of the legal understanding underlying the board's decision on this point, enabling meaningful review.

¶ 37. Finally, in rejecting taxpayers' evidence that their properties were treated differently from others in the town, the board wrote that "the same cost table/schedule were used to value the appellant's property as were to the rest of the parcels in town." This explanation responded directly to the equalization argument, and reflected that because the same cost table and schedule were used for all properties, the board was not persuaded that taxpayers' properties were unfairly valued. It provides ample basis for what would be a very deferential review, since the question before a reviewing court would be whether any evidence in the record supported the town's conclusion on this point. See *Garbitelli*, 2011 VT 122, ¶ 14.

¶ 38. In summary, some, but not all of the board of abatement's explanations in this case satisfy the statutory requirement that it "state in detail in writing the reasons for its decision[s]." 24 V.S.A. § 1535(c).

*Reversed and remanded to the trial court with instructions to remand to the Board of Abatement, Town of Pownal, for a more detailed explanation of the reasons for its denial of taxpayers' request for abatement on the ground that the misclassification of their property over a course of years amounted to a manifest error or*

*mistake, and their request for abatement on the ground that taxation of their .66-acre leach field from 2005 to 2010 as an individual property amounted to manifest error or mistake. In the alternative, the board may hold a new hearing on those two issues. Affirmed in all other respects.*