Vermont Superior Court
Filed 06/26/25
Chittenden Unit

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-00692

| Acabay, Inc. v. Town of Colchester |
| --- |

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Acabay, Inc. seeks to recover amounts it claims the Town of Colchester overbilled for wastewater usage. Acabay first requested an abatement from the Town; when the Town denied that request, Acabay brought this action, appealing the decision pursuant to Rule 75, and asserting a claim for unjust enrichment. The Town moves for summary judgment. The court denies the motion.

The following facts are not in dispute. Acabay owns property in Colchester that it leases to Albany College of Pharmacy. Acabay pays wastewater fees to the Town, based on water usage. In the summer months, water is used at the property for sprinklers, a pond, and the HVAC cooling system. Water used for these purposes does not go into the wastewater system. Accordingly, the Town agreed several years ago that Acabay could install secondary meters to measure the water that does not flow through to the wastewater system; the Town further agreed to deduct these flows from Acabay's wastewater bills.

Champlain Water District ("CWD") owns and operates the public water supply system that provides water to Acabay's property; it also reads Acabay's primary and secondary water meters. CWD then provides the readings to the Town, which then bills Acabay based on those readings. Acabay was not aware of any billing issues until its tenant refused to pay the April 1 to June 30, 2021 invoice, claiming it was disproportionately high. Acabay then asked its Director of Engineering, Jean-Paul Senecal, to audit the wastewater bills from July 2015 to July 2023.[1] In March 2023, Acabay informed the Town that it believed the Town had overbilled it for wastewater.

Mr. Senecal's audit revealed a few billing errors that Acabay brought to the Town's attention. First, Acabay's pond meter was being read incorrectly. This meter has a permanent zero at the end of all readings, but CWD was not including this permanent zero in its reports to the Town until October 4,

---

[1] Acabay concedes that any billing errors that occurred more than six years before the dispute arose are not at issue. *See* 12 V.S.A. § 511 (statute of limitations for civil actions is six years).

2021, when CWD noted that the readings should be seven digits. CWD included the correct reading and noted the mistake in the readings it sent to the Town, but the Town omitted the zero from Acabay's November 2, 2021 wastewater bill. This resulted in a credit to Acabay of only $507.70 when Acabay should have received a credit of $5,077. Second, the audit revealed that Acabay's sprinkler system and cooling-tower supply meters were not working properly. In the reports it provided to the Town, CWD noted that there was a "Reading 'Error code' " for the cooling tower discharge meter in each reading from July 3, 2019, to July 6, 2021. On July 6, 2021, the pond meter had the same error reading. The Town did not inform Acabay about the error codes; instead its wastewater bills to Acabay indicated only that there was zero flow through these meters. Finally, Mr. Senecal's audit revealed that during the April 1, 2022 billing cycle, the pond meter showed a negative water consumption.[2]

Based on his analysis, Mr. Senecal estimated that Acabay overpaid the Town $36,477 from April 1, 2018, to April 1, 2023. Acabay requested an abatement. By letter dated January 31, 2024, the Colchester Sewer Board ("the Board") denied the request. The Board stated, in relevant part:

> We completely understand your perspective, that you paid for more wastewater than you generated. However, consistent with industry standard due to the challenges in metering wastewater, our wastewater billing is based on water consumption. We have hundreds of residential and business wastewater customers, all of whom pay for wastewater based on gallons of water used, and all of whom share your situation of not sending as much wastewater to treatment as they consume in water. We use water consumption as a proxy for wastewater disposal, and everyone uses more water than they dispose of. Understanding this, our wastewater charge per gallon, based on water consumption, is less than it would be if based on wastewater disposal.

> . . .

> It is our understanding, based on hearing about and reading the information from 2008-2009, that Acabay requested an abatement from the Board of Sewer Commissioners based on similar grounds at that time. That request was not granted. However, the Town reimbursed Acabay $5,742.10 for the installation of secondary water meters to measure the flow of water that was consumed but which did not enter the Town's sewer system.

> The Town also set up a billing process that allowed for specifically authorized major water consumers to be billed for wastewater, net of the readings from secondary meters that documented the flow of water that would not enter the Town's wastewater disposal system. Based on your testimony, Acabay successfully availed itself of this system until 2015.

---

[2] Mr. Senecal also noted a discrepancy in how the pond meter was measured during a particular period. That meter measured water in gallons, but the Town calculated the billing for that meter in cubic feet. The parties agree that this error worked out in Acabay's favor, and the Town is not seeking to recoup any money that may have been improperly credited to Acabay. This error, therefore, is not material to the current dispute.

As the owner of those secondary meters used to document water not treated through our wastewater system, it was, and is, the Town's expectation that Acabay monitors its secondary meters. It is our understanding from your testimony that these secondary meters could be checked by an Acabay contractor on a routine basis and also that they could be monitored by your financial people on a quarterly basis. Had Acabay monitored the performance of its meters through either or both of these means, it could have identified their failure early on and had them repaired and therefore would not have accrued $66,257 in alleged overbilling from 2015 to present.

Considering that our wastewater fees are based on gallons of water consumed, and that the Town has permitted Acabay to avail itself of a system of billing net of documented water that does not enter our wastewater system at 261 Mountain View Drive, and considering the very limited authority we have to grant abatements for wastewater billing (which relies on the same statute as property taxes . . .), we find that we cannot grant an abatement.

After receiving the Board's decision, Acabay filed the instant complaint.

Analysis

1. Rule 75 Appeal

A town's selectboard "may abate in whole or part . . . water charges [and] sewer charges" when "there is a clear or obvious error[.]" 24 V.S.A. § 1535(a)(4).[3] The parties agree that Rule 75 provides the proper avenue for appealing the Board's decision denying Acabay's request for an abatement. *See Murray v. City of Burlington*, 2012 VT 11, ¶ 10, 191 Vt. 597 (taxpayer entitled to Rule 75 review when board denies request for abatement); *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 5, 191 Vt. 76 (appeal of abatement decision may be taken under Rule 75 because abatement statute does not explicitly provide for appeal). Because the statutory language allowing an abatement is "entirely permissive," the court reviews the Board's decision for abuse of its discretion. *Guntlow v. Bd. of Abatement, Town of Pownal*, 2014 VT 118, ¶ 18, 198 Vt. 174; *Garbitelli*, 2011 VT 122, ¶ 14; *see also Murray*, 2012 VT 11, ¶ 14 (appellant has burden to show Board abused its discretion in denying abatement request).

Regardless of whether a board grants or denies an application for abatement, the statute in effect when the Board issued its decision required it to "state in detail in writing the reasons for its decision." 24 V.S.A. § 1535(c).[4] The Vermont Supreme Court considered this statutory requirement in

---

[3] The parties agree that Acabay's request for abatement is controlled by 24 V.S.A. § 1535(a) even though the subdivision referencing "manifest error" that was in effect in January 2024 did not specifically apply to water charges. *See* 24 V.S.A. § 1535(a)(4) (version in effect prior to May 13, 2024).

[4] The statute was later amended to add language requiring boards of abatement to "provide sufficient explanation to indicate to the parties what was considered and what was decided" . . . and to "address the arguments raised by the applicant." 24 V.S.A. § 1535(c) (effective May 13, 2024).

*Guntlow* and explained that "a board of abatement's decision must provide sufficient explanation to 'indicat[e] to the parties, and to an appellate court, what was decided and upon what considerations.'" *Guntlow*, 2014 VT 118, ¶ 32 (quoting *Punderson v. Town of Chittenden*, 136 Vt. 221, 225 (1978)). The Court continued:

> The writing need not be lengthy, exhaustive, or legalistic, and need not satisfy the standards we would apply to a trial court's findings. But it must address the arguments raised by the applicant. The more detailed and clear a taxpayer's own presentation, the greater the board's duty to respond in kind.

*Id*. (citing *Harris v. Town of Waltham*, 158 Vt. 477, 481 (1992)). In another case involving the review of an administrative agency, the Court emphasized the need for "clear application of applicable standards in both judicial and administrative decisions." *In re MVP Health Ins. Co.*, 2016 VT 111, ¶ 20, 203 Vt. 274. "Decisions 'arrived at without reference to any standards or principles [are] arbitrary and capricious'" and deny the applicant due process of law. *Id*. (quoting *In re Miserocchi*, 170 Vt. 320, 325 (2000)). The Court continued, "'[a]dequate findings of fact are required, so that we may determine whether the sound discretion implicitly mandated by [a] statute was in fact exercised.'" *Id*. (quoting *State v. Powers*, 136 Vt. 167, 169 (1978)). Moreover, *Guntlow*, 2014 VT 118, ¶ 18; *Garbitelli*, 2011 VT 122, ¶ 6; *see also Ketchum v. Town of Dorset*, 2011 VT 49, ¶ 15, 190 Vt. 507 (mem.) (Rule 75 review normally involves review of legal issues and is limited to administrative record from administrative agency). Here, however, the parties have not provided the administrative record to the court, leaving the court unable to determine the clarity or level of detail of Acabay's presentation to the Town. Without this information, the court is unable to determine either whether the Board's decision satisfies the statute's requirements or if the Board otherwise abused its discretion in denying Acabay's request for an abatement.[5] Accordingly, the court denies the Town's motion on the Rule 75 claim.

2. <u>Unjust Enrichment</u>

According to the doctrine of unjust enrichment, "'a party who receives a benefit must return the benefit if retention would be inequitable.'" *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 68, 218 Vt. 144 (quoting *Kellogg v. Shushereba*, 2013 VT 76, ¶ 22, 194 Vt. 446). Unjust enrichment is an equitable action, in which the court must determine whether "equity and good conscience demand that the

---

[5] The Town takes issue with Acabay's failure to allege in its complaint that the Board abused its discretion. Motion at 6. Rule 75, however, does not require an appellant to specify the standard of review; it simply requires the appellant to state the grounds upon which it contends it is entitled to relief and to make a demand for relief. V.R.C.P. 75(b). Even a cursory reading of the Complaint makes clear that Acabay more than adequately set forth the grounds on which its claim for relief rests, and unambiguously invoked Rule 75. No more is required.

defendant return that which the plaintiff seeks to recover." *Brookside Mem'ls, Inc. v. Barre City*, 167 Vt. 558, 560 (1997) (citing *Legault v. Legault*, 142 Vt. 525, 531 (1983)). To prevail on its claim, Acabay must prove that " '(1) a benefit was conferred on [the Town]; (2) [the Town] accepted the benefit; and (3) [the Town] retained the benefit under such circumstances that it would be inequitable for [the Town] not to compensate [Acabay] for its value.' " *Beldock*, 2023 VT 35, ¶ 68 (quoting *Center v. Mad River Corp.*, 151 Vt. 408, 412 (1989)).

Acabay asserts in its complaint that the Town was unjustly enriched because it received payments for wastewater that never went into the wastewater system and that the Town would not have received these payments if the meters had been properly read and the amounts it owed had been calculated correctly. Acabay asserts that it would be unjust and inequitable for the Town to benefit from these errors at Acabay's expense. The Town denies that it has been unjustly enriched and relies on the voluntary payment rule, which states that voluntary payments for water or sewer services are not generally recoverable. *See Brookside Mem'ls*, 167 Vt. at 559. It also contends that Acabay is not entitled to rely on the unjust enrichment doctrine because Acabay, not the Town, is responsible for monitoring its secondary meters and that if Acabay had checked its meters or reviewed its wastewater bills, it would have known there was a problem.

*Brookside Memorials* teaches that the doctrine of unjust enrichment "may be applied in an action seeking a refund from a municipality[.]" 167 Vt. at 559. "The voluntary payment rule is based on public policy concerns that governmental bodies must be able to rely on the presumptive validity of their laws in planning their budgets." *Id*. This rule does not come into play, however, when the payor does not have "full knowledge of the facts." *Id*. (citing 17 E. McQuillen, The Law of Municipal Corporations, § 49.62, at 425 (3d ed. 1993)); *see Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 130 (Colo. App. 2007) ("The voluntary payment rule distinguishes between payment of money based on a mistake of law and a mistake of fact. Money paid under mistake of fact may be recovered.") (citations omitted).

In *Brookside Memorials*, the voluntary payment rule did not bar the plaintiff business's request for a refund of sewer bill overpayments because both the city and the business were mistaken about the correct sewer rate to apply to the plaintiff's business. 167 Vt. at 559. The Court found that the city, not the business, "was in a better position to discover and correct the error." *Id*. Here, Acabay contends that it was not aware that some of its secondary meters were not functioning properly or that the Town was not billing it accurately, which it describes as mistakes of fact. The Town denies that it made any mistakes—of law or of fact—and argues that Acabay should not be rewarded for failing to monitor its

secondary meters or for failing to review the bills it received from the Town. According to the Town, if Acabay had monitored its meters and reviewed its bills, it would have realized the problems/errors that led to its request for an abatement.

Acabay disputes the Town's argument that it could have discovered the mistakes at issue. Instead, it notes that while CWD sent readings to the Town showing some of the secondary meters' error messages, those messages were not carried through on the bills the Town sent to Acabay; thus, while the Town was aware that the meters were not reading properly, it hid this information from Acabay. In addition, the Town's omission of a zero from a meter reading was not apparent from the bill Acabay received, leading to several thousand dollars of overbilling; this omission was entirely of the Town's creation and exclusively within the Town's knowledge. Finally, while the Town contends Acabay was responsible for monitoring its secondary meters, the regulations in effect at the time of the Town's abatement denial did not require this; that requirement came into being only after the current dispute arose.[6]

The court concludes that these and other factual issues require further factual development; on the undisputed facts before the court, it cannot conclude that the Town is entitled to judgment as a matter of law. Accordingly, the denies the Town's motion on the unjust enrichment claim. Like the Rule 75 claim, that claim must be resolved at trial.

## Conclusion

The court denies the Town's motion for summary judgment. Per the court's February 11, 2025 entry, the parties must now mediate the case within 60 days. The judicial assistant will schedule a pretrial conference after September 1, 2025.

Electronically signed pursuant to V.R.E.F. 9(d): 6/26/2025 1:00 PM

Samuel Hoar, Jr.
Superior Court Judge

---

[6] The Town's Sewer User Charge System was amended in April 2024, *inter alia*, to require owners of secondary meters to "ensure proper operations of the secondary water meter(s)[.]" These regulations, which were not in effect prior to April 2024, specify that "Failure to ensure proper operation of the secondary metering system leading to a billing discrepancy shall not constitute a billing error, or grounds for abatement."  Exh. 4 to Nelson Declaration at ¶ 6 C.  The earlier version of the Town's User Charge System does not specifically address secondary meters and merely states that "Users who have water meters shall have their user charges based on water meter readings." Exh. 1 to Nelson Declaration at p. 2.  It further states that "The Director of Public Works shall have the authority to adjust wastewater allocation or make corrections in billings that were prepared in error."  *Id*.