*Pratt v. Menard*, No. 419-7-16 Wncv (Teachout, J., Dec. 21, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 419-7-16 Wncv** |

**LEO PRATT**
     **Plaintiff**

     **v.**

**LISA MENARD, Commissioner,**
**Vermont Department of Corrections**
     **Defendant**


### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Leo Pratt is an inmate in the custody of the Commissioner of the Vermont Department of Corrections.  A final hearing was held on December 6, 2018 on his petition for Rule 75 Review of Governmental Action.  He seeks expungement of material in Department records.  Mr. Pratt was present and represented by Attorney Seth Lipschutz.  The Commissioner was represented by Attorney Andrew Gilbertson.  The court heard evidence and oral argument.  Based on the credible evidence, the court makes the following Findings of Fact, Conclusions of Law, and Order.

### Findings of Fact

On January 29, 2016, an incident occurred in prison involving conduct of Mr. Pratt.  A report of the incident was entered into DOC's computer Offender Management System known as JailTracker.  What was written there as the description of the incident cannot be determined from the state of the evidence.  Reports about incidents are routinely entered into JailTracker by prison staff.  The information is used by prison personnel for purposes of assuring safety in the prison for inmates, staff, volunteers, and others.  For example, an incident report might indicate that something occurred between two inmates or an inmate and a guard, and the information may be used to determine that those inmates should be housed separately, or that the guard should not be involved in the transport of a particular inmate.  JailTracker assigns an incident number to the Incident Report.  In this case, the number was originally 313623, although it may later have become or been related to or confused with number 313632.

If the prison decides to investigate and/or follow up with disciplinary proceedings, a Disciplinary Report (DR) is written.  The scope of a DR is unclear, but it appears that it may be a charge of violating a specific prison rule.  This may be followed by an investigation, and the DR and all investigation material is attached to the original incident number and Incident Report in JailTracker.  If a hearing is held, all hearing notices and reports, and any appeal documents are also attached to the incident in JailTracker.  All the documents related to the incident are collectively called the "DR Packet."

Based on the January 29, 2016 incident #313623, Mr. Pratt was charged with the DR of Major A #3 Assault. A hearing was held on February 5, 2016 and he was apparently found guilty, and on February 17, 2016, he appealed, claiming that he was not allowed to attend the hearing and did not know about it, and that he had received no Findings of Fact. On March 31, 2016, the Superintendent responded to the appeal as follows: "(1) Appeal not answered in time frame required under [Directive] 410.01,[1] (2) DR removed from record – incident and behavior remain on record."

Mr. Pratt appealed that outcome, stating that "Supt removed conviction but incident and record of behavior still in system." Mr. Pratt's position, and the basis of his petition in this case, is that if the DR is expunged, all material and references related to not only the procedure but the underlying behavior are required to be removed and obliterated from JailTracker.

Once a DR is filed in the regular JailTracker system, the system automatically adds the DR and the related incident number to a separate report or list in JailTracker, called the "Incident Infraction History Report." Thus, the DR appears in two places in JailTracker under the same number. If a DR is expunged, the practice in the prison is supposed to be that the DR Packet gets deleted from both the general JailTracker history and the "Incident Infraction History Report." The original Incident Report, the description of the incident itself—the underlying behavior— remains on the general history portion of JailTracker. This is according to the testimony of David Turner, DOC Records Manager. There is no written policy establishing this procedure. It appears to be a practice based on interpretation of Directive 410.01 and 28 V.S.A. § 853(c).

Mr. Pratt appealed, and the investigator wrote, "I find that policy has been followed and the DR has been removed from TJ Pratt's record. The documentation of the behavior will remain in his record—as is policy. The lack of a DR does not negate the fact the behavior existed and needs to be recorded. I recommend dismissing this grievance." The Superintendent/District Manager denied the appeal on April 18, 2016 and wrote: "The documentation will remain recorded per policy. . . Incident/behavior happened/DR conviction removed."

Mr. Pratt appealed to an Executive Corrections Officer. Then, on May 25, 2016, he appealed to the Commissioner on the grounds that he had not received any response to his grievance appeal within 30 days as required by Directive 410.01. He then received a denial of the appeal on June 21, 2016 from the Executive Corrections Officer, who wrote: "Documentation of an inmate's behavior does not require that a DR be on record. The DR has been removed but reports and other evidence stay in your file as a documented incident. This is allowed and appropriate."

This is actually inconsistent with the testimony of Mr. Turner, who said that only the

---

[1] Directive 410.01, Procedural Guidelines, § 9 sets forth the procedure for disciplinary appeals. The "[f]ailure to respond to the appeal within thirty (30) calendar days will result in the dismissal of the disciplinary action, and staff will expunge the DR packet from the inmate's file and the database." *Id*. § 9(c).

original description in the Incident Report stays in JailTracker, and the DR Packet, which includes all "reports and other evidence" except for the original Incident Report, is removed. The appeal decision indicates that not only was the original Incident Report to remain in JailTracker, but all "reports and other evidence" would remain as well.

The evidence does not include what was on the "regular" JailTracker history at any time from January 29, 2016 to the present. In other words, the original Incident Report itself is not in evidence. What the evidence does show is that the incident and related DR had not been removed from the "Incident Infraction History Report" as of March 8, 2017 (Exhibit 4). What that report showed on that date under Incident # 313632[2] is the following:

> Major A0# - A01F – Assault, intentionally striking, attacking or behaving in such a reckless manner that one's actions cause a strike of a Department employee, contractor or volunteer. 01/29/2016 17:49 Vosburgh, Peter
>
> Details: This DR was expunged based on an agreement with the Attorney General's Office.
> Plea: Not Guilty          Finding: Not Guilty

It is unknown and cannot be determined from Exhibit 4 whether the DR Report and other materials that are part of the DR packet were attached and available by computer link in the "Incident Infraction History Report." It is also unknown whether the DR Report and other materials that are part of the DR packet were attached to the incident number in the "regular" overall JailTracker history and available by computer link. The June 16, 2016 Decision of the Corrections Executive suggests that they would have been available in that way.

On July 14, 2017, Mr. Pratt filed his Complaint for Review of Governmental Action in this case, claiming that the information from the expunged DR was continuing to be used against him.

The "Incident Infraction History Report" is consulted by DOC when evaluating an inmate for the following purposes: determining custody status (minimum, medium, close, segregation), reviewing eligibility for work camp, developing recommendations regarding parole and reintegration furlough, and determining programming. The existence of DRs, or lack thereof, is one of the factors used in making these decisions.

On March 12, 2018, an Incident Report was created in JailTracker concerning Mr. Pratt. The Incident Report describes that Mr. Pratt had just been transferred to the prison in Newport the previous day, and that he was serving a sanction of disciplinary segregation that was to end the next day, March 13th, and that he was a "close custody inmate." It continues as follows:

> Inmate Pratt has exhibited many antisocial behaviors over the last year that have

---

[2] The reason it appears under #313632 rather than #313623 is unknown. Mr. Pratt's uncontradicted testimony was that he was only charged with one DR based on conduct on January 29, 2016.

made it so his CVS assessment has him scored as close custody. He has demonstrated violent behavior towards other inmates and he [sic] caught with fabricated weapons. Due to his antisocial behaviors I am recommending inmate Pratt be placed in administrative segregation. Below is a list if [sic] incidents that demonstrate why Inmate Pratt is a threat to the secure and orderly running of the facility.

[*Two paragraphs follow that each identify a Major DR, one for assaulting another inmate with a fabricated weapon and another for being found in possession of fabricated weapons during a facility shakedown. Then the account continues:*]

When reviewing inmate Pratt's DR history I observed that he has other incident reports in the past for possessing fabricated weapons and one for using a fabricated weapon to assault a correctional officer. Due to his behaviors in the past and his most recent behaviors of fabricating weapons and using them on inmates and staff he has demonstrated that he is a continued threat to the secure and orderly running of the facility.

The Incident Report then recommends that he be placed on Administrative Segregation pending a hearing or transferred to a close custody unit. Administrative Segregation is a different status than Disciplinary Segregation. After a conviction for a disciplinary infraction, an inmate may be given Disciplinary Segregation for a specific period of time as a sanction for the violation. Administrative Segregation is done for management of the inmate within the prison. See Directive 410.03 (Placement on Administrative Segregation).

The creator of this March 12, 2018 Incident Report specifically states that he acquired the information that in the past Mr. Pratt had possessed a fabricated weapon for assaulting a correctional officer from an "incident report" that he learned about when "reviewing inmate Pratt's DR history." It is a reasonable inference that he consulted the "Incident Infraction History Report" and saw the entry quoted above that showed up on that report under Incident #313632 and states that a DR for assault had been expunged. He may also have been able to link to the related reports and material either through the DR Infraction History Report entry itself or the Incident Report entry in regular JailTracker. It is clear that he refers to specific facts of a fabricated weapon used to assault a correctional officer, and those facts do not appear on the face of the entry in the DR Infraction History Report. It is unknown what is in the original Incident Report of January 29, 2016.[3] In any event, it appears that the reporter of the March 12, 2018 report was led to the specifics of the January 29, 2016 incident by consulting the DR history report, i.e., the "Incident Infraction History Report." This may have been the intention of the Corrections Executive in ruling that the "reports and other evidence would remain," although that would be inconsistent with the procedural practice of removing from the DR history report

---

[3] The evidence at the hearing does not actually identify anywhere what the behavior underlying the original DR was. From the record in the case, including documents in summary judgment motion filings, the gist of the behavior was fashioning a pen into a weapon and using it to assault a prison guard.

any entries about an expunged DR.

A hearing officer placed Mr. Pratt in Administrative Segregation based specifically in part on "other incident reports for possessing fabricated weapon and one for using a fabricated weapon to assault a correctional officer." (Exhibit 7.) A hearing was apparently held, and the following appears as part of the Findings of Fact:

> #5. Due to your behaviors in the past listed in your DR/Infraction history and most recent behavior of fabricating weapons I find that you are a threat to the secure and orderly running of the facility and to others.

The hearing officer clearly relied in March of 2018 on behaviors "listed in your DR/Infraction history." Mr. Pratt's DR/Infraction history clearly includes a number of DRs for which he was found guilty, including some involving assaultive or threatening behavior within the previous two years, other than the DR arising from the January 29, 2016 incident. Thus, there may have been a valid basis for administrative segregation even if there had been nothing about the January 29, 2016 matter on the "Incident Infraction History Report." However, nothing on the face of the DR/Infraction history report shows facts of using a fabricated weapon to assault a correctional officer. That could only have been discovered from related material.

Mr. Pratt appealed the Administration Segregation determination to the Commissioner who denied the appeal on April 6, 2018 with the following explanation:

> You claimed that an expunged DR was used as a justification for placing you in ad seg. The Hearing Officer did not use any DR conviction for stabbing Bruce Nappi with a pen as justification for placing you in ad seg. However, the incident report about this situation as well as other behaviors documented in your incident history, which show a pattern of serious non-compliant behavior were used.

Mr. Pratt remained in Administrative Segregation for a period of time but is no longer on administrative segregation.

By December 5, 2018, the day before the hearing in this case, the "Incident Infraction History Report" no longer included the above-cited entry: there was no reference to any incident with the number 313623 or 313632 in that report. It is unknown what appears on the "regular" JailTracker history report at this time.

## Conclusions of Law

The issue in this case is what expungement under Directive 410.01, Procedural Guidelines, § 9(c) requires. Mr. Pratt argues that once he became entitled to expungement pursuant to § 9(c), the DOC was required to erase all references to both the events that gave rise to the disciplinary proceeding as well as all references to the disciplinary proceeding itself, wherever any of that information may reside. In his view, expungement means expungement.

5

The DOC's position is predicated on a fundamental recordkeeping distinction between the content of an Incident Report and any disciplinary consequences that may flow from the events recorded in that Report. The DOC agrees that when a disciplinary conviction is expunged pursuant to Directive 410.01, Procedural Guidelines, § 9(c), then its records of or references to that disciplinary action must be erased. Its record of the underlying events that prompted the Incident Report and that are reflected in it remains as part of the DOC's narrative history of events related to a particular inmate in JailTracker.

The DOC's interpretation of *expungement* for purposes of Directive 410.01, Procedural Guidelines, § 9(c), as described above, is reasonable and the court therefore defers to it.[4] See *Roberts v. Univ. of Vermont*, 2013 VT 30, ¶ 14, 193 Vt. 529 (explaining that the court generally will defer to permissible interpretations of statutes and rules "by the agency charged with their execution."). The DOC argues that the original Incident Report alone, without the other material that is part of the "DR Packet," should remain on the regular JailTracker history page so that it can be used for safety and security purposes within the facility. It makes sense that a description of the behavior alone, without any information about a DR charge, investigation, conviction, and expungement, should be able to be kept as a record of conduct within the facility to be used for regular administrative purposes such as safety and security of all in the facility. The DOC has legitimate needs to keep track of incidents involving specific inmates even if a disciplinary conviction arising out of an incident is expunged for lack of a timely response to an administrative appeal. Moreover, to the extent that the inmate believes that factual material in the incident report itself is incorrect, the inmate may challenge it pursuant to 28 V.S.A. § 107(e).

In this case, all references to the disciplinary proceeding at issue were not removed from the DR/Infraction History Report until sometime between March 2017 and December 2018. The evidence shows that information about the DR was used in connection with a decision to place Mr. Pratt in administrative segregation in March 2018. Mr. Pratt therefore had a valid basis for his complaint. By the time of trial, however, that situation had been remedied in the "Incident Infraction History Report."

It is unknown whether material other than the original narrative remains in the "regular" JailTracker history. Because the Incident Report at issue in this case was never introduced into evidence, the court cannot determine whether it is limited to a description of underlying events, as the DOC contends, or whether it contains more information than a simple description of behavior, such as references to the expunged disciplinary proceeding. The DOC's evidence was that it contains only a narrative description of behavior, and Mr. Pratt has not proved otherwise.

The regular JailTracker history that includes the permissible Incident Report should not also contain references to any phase of the disciplinary proceeding—the investigation, charge, conviction, and expungement. To the extent that there are any investigation reports, charges, or other materials relating to the disciplinary proceedings attached to the remaining permissible

---

[4] There is no need to analyze 28 V.S.A. § 853(c) in this case. Neither the DOC nor Mr. Pratt argues that § 853(c) provides a broader expungement right than Directive 410.01, Procedural Guidelines, § 9(c), or that § 853(c) conflicts with the DOC's interpretation of § 9(c) in any material way in the circumstances of this case.

Incident Report, Mr. Pratt is correct that those should be expunged. In this regard, Mr. Pratt is correct that expungement means expungement.

## ORDER

For the foregoing reasons, any reference to an investigation, charge, conviction, and expungement of a DR related to the January 29, 2016 incident must be and remain expunged from both the regular JailTracker history and the "Incident Infraction History Report." This order does not otherwise affect the original narrative of the incident, which may remain in the regular JailTracker history.

Dated at Montpelier, Vermont this _____ day of December 2018.


_____
Mary Miles Teachout
Superior Judge