2011 VT 122

# Michael Garbitelli v. Town of Brookfield

[38 A.3d 1133]

No. 11-020

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed November 4, 2011

Motion for Reargument Denied December 12, 2011

Neal D. Ferenc, Moretown, for Plaintiff-Appellant.

Pamela Stafford, Randolph, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Taxpayer appeals from a superior court judgment affirming the Town of Brookfield Board of Abatement's denial of his request for a tax abatement. We affirm.

¶ 2. During the townwide reappraisal in 2007, taxpayer refused to allow the listers to inspect his property, other than the foyer and the basement. His property was assessed at $1.6 million. Taxpayer then appealed from this assessment, and we affirmed, noting that taxpayer had refused entry to the tax assessor and had therefore failed to provide an adequate basis to demonstrate that the assessment was erroneous. *Garbitelli v. Town of Brookfield*, 2009 VT 109, 186 Vt. 648, 987 A.2d 327 (mem.). Taxpayer later allowed entry to the listers for 2009, which resulted in an assessment of $957,000. Taxpayer then moved for a tax abatement for the years 2007 and 2008 under 24 V.S.A. § 1535(a)(4), which authorizes an abatement in cases involving "a manifest error or a mistake of the listers." The Board denied the request, finding that there was no mistake attributable to the listers since they were denied entry and were forced to use the

best information available to them. The Board also stated that abatement procedures are not the appropriate vehicle for appealing property valuations.

¶ 3. Conducting a Vermont Rule of Civil Procedure 75 review of the Board's action, the superior court affirmed. The court noted that Rule 75 is "the modern equivalent" of certiorari review and stated that such review is confined to questions of law and does not require a de novo hearing. The court then held that taxpayer had failed to demonstrate an abuse of discretion by the Board. It explained that the abatement statute emphasizes that any error or mistake must be attributable to the listers, and given that it was taxpayer's own conduct that resulted in the valuation, there was no abuse of discretion by the Board. The court also agreed with the Board that abatement procedures are not meant to provide a second opportunity to appeal property valuations.

¶ 4. Taxpayer argues that the superior court erred by: (1) conducting its review on the record, rather than de novo; (2) concluding that the Board did not abuse its discretion by holding there was no "manifest error or a mistake of the listers"; and (3) stating that taxpayer cannot collaterally attack the 2007 and 2008 valuations via the abatement process.

■ ■ ¶ 5. We review questions of law, including the applicable legal standard applied by the trial court, de novo. *In re K.M.M.*, 2011 VT 30, ¶ 14, 189 Vt. 372, 22 A.3d 423. This case presents the opportunity to clarify the law with regard to the scope of review of appeals from real property tax abatement proceedings under Rule 75. Rule 75 allows an appeal of any action or failure to act by a state agency or subdivision that is not appealable under Vermont Rule of Civil Procedure 74, "if such review is otherwise available by law." Rule 74 applies when a statute specifically provides for review. *Hunt v. Vill. of Bristol*, 159 Vt. 439, 439, 620 A.2d 1266, 1266 (1992). Where legislation is silent as to review, an appeal may be taken under Rule 75. *Id.* at 440, 620 A.2d at 1266. The abatement statute does not explicitly provide for an appeal. Thus, here, Rule 75 applies.

■ ■ ¶ 6. Rule 75 is, as the superior court concluded, the "modern equivalent" of extraordinary relief, such as certiorari. *In re Town of Bennington*, 161 Vt. 573, 573-74, 641 A.2d 1331, 1332 (1993) (mem.). We have abolished common law writs and replaced them with Rules 74 and 75, which are now the exclusive vehicles

to challenge governmental action or inaction. See V.R.C.P. 81(b). A court reviewing governmental action is typically limited to review of questions of law. *Ketchum v. Town of Dorset*, 2011 VT 49, ¶¶ 14-15, 190 Vt. 507, 22 A.3d 500 (mem.). Review of evidentiary questions is limited to "whether there is any competent evidence to justify the adjudication." *Id.* ¶ 14 (quotation omitted). Applying this standard, review is normally limited to answering legal questions raised by the factual record developed in the administrative proceeding. *Id.* ¶ 15.

■ ■ ¶ 7. Taxpayer contends that our decision in *Chapin Hill Estates, Inc. v. Town of Stowe*, 131 Vt. 10, 298 A.2d 815 (1972), is controlling and required de novo review in the trial court. Taxpayer, however, reads too much into *Chapin Hill*. In that case, we held that "review in the nature of *certiorari* may not be limited only to the facts as found in the record" and "the reviewing court is not precluded from taking testimony." *Id.* at 13, 298 A.2d at 817. The Court reasoned that Rule 75(d) contemplates taking evidence by providing for de novo review or trial by jury, but noted that new evidence is not required. *Id.* The Reporter's Notes state that Rule 75(d) "leaves to specific statute or prior practice the questions whether review in a given case is de novo and whether trial is to be to a jury." Neither statute nor prior practice indicate that review in the present case should have been de novo. In fact, this Court has held that Rule 75 places the lower court in the position of an appellate court in reviewing administrative agency decisions, which typically does not entitle plaintiffs to de novo review. *Burroughs v. W. Windsor Bd. of Sch. Dirs.*, 141 Vt. 234, 237, 446 A.2d 377, 379 (1982) (holding, in review of school board renewal decisions under Rule 75, that "the superior courts have jurisdiction in the nature of an appellate court only" and plaintiff was therefore not entitled to de novo review).

■ ¶ 8. *Chapin Hill* and subsequent cases did recognize that where the record is inadequate, evidence may be admitted to establish facts necessary for the trial court's review. 131 Vt. at 13, 298 A.2d at 817; *State v. Forte*, 159 Vt. 550, 554-55, 624 A.2d 352, 355-56 (1993). For example, where a transcript from the administrative proceeding is unavailable or incomplete, evidence may be admitted on an appeal taken under Rule 75. *Forte*, 159 Vt. at 555 n.2, 624 A.2d at 355 n.2. This is a very limited circumstance, however. Indeed, *Chapin Hill* merely held that "the reviewing

court is *not precluded* from taking testimony," 131 Vt. at 13, 298 A.2d at 817 (emphasis added), which simply indicates that the reviewing court is neither required to take testimony, nor barred from taking testimony. In other words, the court has discretion to gather additional evidence through a de novo hearing or to conduct its review on the record.

¶ 9. Thus, where the reviewing court is faced with a question of law and where the record is sufficient and complete, on-the-record review is appropriate. The reviewing court has discretion, however, to engage in a de novo proceeding and take additional evidence. See V.R.C.P. 75(d) (allowing for trial by jury in some cases). Further, we have held that where an administrative agency makes its decision following a quasi-judicial procedure in which the plaintiff "freely participate[s]," de novo review may be inappropriate. *Ketchum*, 2011 VT 49, ¶ 16 (looking at facts and circumstances of selectboard's decision, including plaintiffs' involvement in quasi-judicial proceeding, to determine if on-the-record review was appropriate).

¶ 10. In this case, taxpayer requested, attended, and participated in an abatement hearing in December 2009. The Board then issued a written decision explaining its denial of taxpayer's request for abatement. On appeal pursuant to Rule 75, the trial court concluded that there were no factual disputes and, as such, there was no need for additional evidence. Indeed, taxpayer conceded at oral argument in this Court that there were no disputed issues of fact and no additional evidence that taxpayer wanted to enter into the record. Therefore, the trial court did not err in conducting an on-the-record review following taxpayer's complaint brought pursuant to Rule 75.

¶ 11. Taxpayer's second argument is grounded in the language of the abatement statute, which provides that the Board may abate "taxes in which there is manifest error or a mistake of the listers." 24 V.S.A. § 1535(a)(4). The superior court interpreted the statute to mean "any error or mistake must be attributable to the listers" and concluded that error of the listers is required for abatement under the law. Taxpayer contends that a "manifest error" need not be attributable to the listers, but may exist independently, as here, as a result of disparate tax assessments. We agree with taxpayer's interpretation of the statute.

¶ 12. When interpreting a statute, we seek to discern and implement legislative intent. *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406, 737 A.2d 900, 905 (1999). In doing so, we may look to "the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." *Id.* Before the statute was amended to its current form, it read:

> [The board of abatement] may abate the taxes of persons who have died insolvent, removed from the state, or are unable to pay their taxes. [The board] may abate in whole or in part taxes in which there is manifest error or taxes in which there is a mistake of the listers.

24 V.S.A. § 1535 (1975). Thus, the pre-amendment provision allowing for abatement was in the disjunctive, meaning "of the listers" did not modify "manifest error." The statute did not require manifest error to be attributable to the listers. Rather, the statute permitted the Board to abate taxes when there was *either* a manifest error, no matter whose fault, or a mistake of the listers. The 1976 amendments reorganized the statute by dividing it into subsections and adding some separate grounds for abatement. It appears that the Legislature intended merely to streamline existing language by removing surplus words in the clause providing for abatement where there is error or mistake. Thus, we hold that the trial court was incorrect in concluding that a manifest error must be attributable to the listers.

¶ 13. Although we agree with taxpayer's interpretation of the statute's meaning, we reach the same result as the superior court. Taxpayer argues principally that the "extreme disparity" between $1.6 million and $957,000 is an "obvious mistake" amounting to manifest error. We disagree.

¶ 14. The language in the statute is entirely permissive and allows the Board to abate taxes, but does not require it to do so even if the taxpayer falls within one of the categories allowing for abatement. Applying the same standard as the superior court, *Tarrant v. Department of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999), we review the Board's decision denying abatement for abuse of discretion. See *Royalton Coll., Inc. v. State Bd. of Educ.*, 127 Vt. 436, 445, 251 A.2d 498, 506 (1969) (holding that "[d]iscretionary rulings may be set aside only for abuse").

¶ 15. Both parties agree that tax abatement is an equitable remedy. Some courts have held as much. See *William Raveis Real Estate, Inc. v. Comm'r of Revenue Servs.*, 686 A.2d 519, 525 (Conn. App. Ct. 1996) (holding trial court did not abuse it discretion in refusing to exercise equitable powers to abate taxes); *Paras v. City of Portsmouth*, 335 A.2d 304, 307 (N.H. 1975) (noting that "property tax abatement is an equitable remedy utilized to correct errors in property tax levies"). We conclude that tax abatement is an equitable remedy, and thus the maxim that a party seeking an equitable remedy must come to court with clean hands is fully applicable. See *Starr Farm Beach Campowners Ass'n v. Boylan*, 174 Vt. 503, 506, 811 A.2d 155, 160 (2002) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)). Equity "denotes the spirit . . . of fairness, justness, and right dealing." *Id.* at 506-07, 811 A.2d at 160 (quotation omitted). A court has great discretion to deny aid to the "unclean litigant" and can refuse to be "the abettor of iniquity." *Precision Instrument Mfg. Co.*, 324 U.S. at 814-15 (quotation omitted). As such, the Board was entitled to weigh the equities and take into account any bad conduct of taxpayer. The Board found that "[o]n numerous occasions" from 2006 through 2009, taxpayer refused to let the listers enter his property. Taxpayer engaged in unfair and inequitable conduct by refusing the listers reasonable access to the property. The Board properly considered taxpayer's conduct, and we find no abuse of its discretion in denying his abatement request on this ground.

¶ 16. Taxpayer's final arguments are equally unpersuasive. His argument that the Board and the superior court confused tax abatement with an appeal of a tax assessment is unsound because both bodies plainly analyzed the abatement statute. Both the Board and the lower court, however, correctly pointed out that taxpayer appeared to be seeking a second bite at the apple to relitigate his tax assessment.

¶ 17. Taxpayer also argues that the Board's denial of tax abatement violates the Proportional Contribution Clause of the Vermont Constitution, Vt. Const., ch. I, art. 9, and the Fourteenth Amendment of the Federal Constitution because taxpayer was forced to pay a disproportionate share of the tax burden. "To comply with the Proportional Contribution Clause, a town must appraise its property at a uniform rate." *M.T. Assocs. v. Town of Randolph*, 2005 VT 112, ¶ 13, 179 Vt. 81, 889 A.2d 740. In the

context of a direct tax appeal, this means that "if a taxpayer demonstrates that the property at issue is assessed at a higher percentage of fair market value than comparable properties, the court must list the taxpayer's property at a corresponding value." *Id.* In contrast to the tax assessment process, in an abatement action the Board is not constrained to value properties at fair market value. In fact, the whole point of tax abatement is to allow the Board to abate taxes for reasons other than that the property was assessed above fair market value. Therefore, a proportional contribution claim makes no sense in the context of an abatement proceeding. Certainly, a taxpayer may argue before the Board that his assessment was so high as to constitute a "manifest error or a mistake of the listers," 24 V.S.A. § 1535(a)(4), but, as noted above, the Board did not abuse its discretion in denying relief on this basis in this case.

*Affirmed.*