*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-164

SEPTEMBER TERM, 2013

| | | |
|---|---|---|
| Margaret Murray | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| City of Burlington | } | DOCKET NO. S1239-10 CnC |

Trial Judge: Geoffrey W. Crawford

In the above-entitled cause, the Clerk will enter:

Taxpayer Margaret Murray appeals from a superior court order affirming a decision by the Board of Abatement of the City of Burlington on her request for the abatement of taxes, interest, and penalties incurred from 1994 to 2010. Taxpayer contends that the conduct at the abatement hearing and deliberations violated her due process rights and denied her a fair and impartial hearing because the City's attorney played an inappropriate role in the process and had ex parte communications with Board members during the Board's deliberations, and that the Board was biased against her. We affirm.

This is the second appeal to reach the Court in this matter. The basic facts are set forth in in Murray v. City of Burlington, 2012 VT 11, 191 Vt. 597 (mem.), and may be briefly summarized. Additional material facts are set forth in the discussion which follows. Taxpayer owns property on Shelburne Street in the City, where a cleaning business has operated in the past. In 1994, apparent petroleum-based contamination was discovered on the property. Taxpayer unsuccessfully appealed the assessment of her property in 1995 and 1996. In 1995, in addition to appealing her tax assessment, taxpayer also filed a tax abatement request. In response, the Board of Abatement abated her taxes by reducing the appraisal on the property by $10,000, to $155,300, but it declined to find the property totally worthless. Id. ¶ 3.

Although the City thereafter continued to assess taxes, taxpayer did not pay any further taxes, and did not appeal her tax assessments. A substantial arrearage, over $112,000 including interest and penalties, accrued. In 2010, taxpayer filed a request for abatement of the accrued taxes, interest, and penalties, again asserting that the property was worthless. Following a hearing, the Board voted to abate the taxes that had accrued prior to 1994, amounting to $16,112, on the ground that arrearages more than fifteen years old were uncollectible due to the limitations period, but it denied the abatement request as to the balance of the arrearage. Id. ¶ 4.

Taxpayer appealed to the superior court, which dismissed on jurisdictional grounds, ruling that by failing to challenge the tax assessment—taxpayer had failed to exhaust her available statutory remedies. Id. ¶ 7. We reversed that decision, holding that her request for abatement, and her appeal of the Board's abatement decision, were not foreclosed by taxpayer's

failure to challenge her tax assessments. Id. ¶ 9. On remand to the trial court, we noted that the superior court's review of the Board's abatement decisions is normally on the administrative record—although the court retains discretion to admit additional evidence depending on the issues raised and the state of the record. Id. ¶ 11. We also emphasized that the superior court's review of the board's decision was "necessarily narrow," and that abatement is not required even if a taxpayer falls within one of the categories allowing for abatement. Id. ¶ 14.

Following our remand, the trial court issued a preliminary order on taxpayer's motion to introduce additional evidence to support her claim that members of the Board were improperly lobbied at the abatement hearing. The court ruled that it would "permit evidence of alleged ex parte communications and other irregularities claimed by" taxpayer. The court held a merits hearing in December 2012, in which it heard testimony from the assistant city attorney, the City assessor, and taxpayer. The court also viewed a videotape of the abatement hearing in its entirety. Shortly thereafter, the court issued a written ruling, affirming the Board's decision.

To address taxpayer's claim of improper communications and influence, the court described the abatement proceeding in some detail. The court noted that taxpayer and her attorneys were present and afforded a full opportunity to participate and present any information they deemed to be relevant. The abatement hearing commenced with a Board member presenting a recommendation of a subcommittee of the Board that the tax abatement be limited to $16,112 in taxes that were no longer collectible due to the limitations period. The assistant city attorney and taxpayer's attorney gave brief opening statements, and Board members then addressed questions to taxpayer, her attorney, and, in some cases, the assistant city attorney. After about an hour of discussion, a Board member moved to adopt the recommendation of the subcommittee, and another member then moved to amend the motion to increase the abatement to either fifty percent of the arrearage, or to waive all interest and penalties. Due to some uncertainty as to the actual amounts involved, the Board suspended the hearing to allow the assistant city attorney to retrieve his file, and the Board then took up other business.

During the Board's consideration of another matter, Board member Kurt Wright may be seen on the videotape talking briefly with the assistant city attorney. A minute or two later, the assistant city attorney addressed the Board concerning the other unrelated abatement request under consideration, and the Board then voted on the matter. Immediately thereafter, Board member Wright moved to recess the Board so that the City Council could hear from members of the public who had been waiting to speak during the Council's regularly scheduled public forum period.[1] During the public forum session, the assistant city attorney may be seen briefly walking past the camera. At the completion of the Council's public forum, the Board reconvened to continue with taxpayer's abatement request. The assistant city attorney reported that the taxpayer's arrearages consisted of approximately $54,000 in back taxes and $58,000 in interest and penalties.

A Board member then clarified that the intent of the amended motion was to abate all interest and penalties. The City assessor, in response, suggested as a condition of abatement that the City obtain an agreement from taxpayer to pay the remaining outstanding taxes. The amended motion was put to a vote, and was defeated ten to three. Board member Wright voted

_____

[1] The Board of Abatement is composed of the full City Council, the mayor, and the assessor. It is not uncommon for the City Council to move back and forth between roles, as occurred here.

2

in favor of the motion. The original recommendation of the subcommittee to abate $16,112 was then considered, and passed unanimously.

As noted, in addition to viewing the videotaped hearing, the trial court here took additional evidence on any off-the-record communications that may have occurred between the assistant city attorney and the Board. The assistant city attorney testified that he could not recall speaking with Board member Wright while taxpayer's hearing was suspended . He did not recall walking in front of the Board before the abatement hearing reconvened and speaking with taxpayer's attorney, nor did he recall speaking with the assessor during the reconvened hearing. He testified that he had no position on taxpayer's abatement request, and could not recall making any off-the- record statements to the Board about the request or seeking to influence their decision. The City assessor testified that he could not recall speaking with the assistant city attorney or another City attorney during the hearing nor did he recall the nature of their conversation. He did assert that, in general, he did not discuss the substance or merits of an abatement request with members.

Against this evidentiary backdrop, the trial court considered taxpayer's claim that she was denied a fair hearing as a result of improper ex parte communications between the City's attorney and members of the Board.[2] The trial court found that there was no evidence of any improper ex parte communications. The court found the statements of neutrality by the assistant city attorney and the assessor to be credible, and further found that, although neither could recall the nature of the very brief off-the-record conversations seen on videotape, the fact that conversations occurred provided "no basis for an inference that their conversation was an improper attempt to lobby members of the Board against [taxpayer's] abatement request."

On the merits, the court also found no basis for overturning the Board's decision to abate only $16,200 of the amount owing rather than the full amount. Taxpayer filed a subsequent motion for a new hearing, supported by an affidavit from her attorney recounting a conversation with the assistant city attorney just before the abatement hearing reconvened. He recalled the assistant city attorney stating that it appeared taxpayer might "receive a substantial abatement" and asking whether, in that case, taxpayer would be willing to "sell the property and or actually pay the taxes?" The trial court denied the motion, finding that the evidence did not demonstrate any improper lobbying or contact with the Board. Prior to the recess, a Board member had moved to substantially increase the abatement recommended by the Board's subcommittee, and the assistant city attorney was simply making a "prediction and inquir[ing] about [taxpayer's] position."

---

[2] Taxpayer and the City argued below, and continue to dispute on appeal, the assistant city attorney's role at the abatement hearing; taxpayer argues that it was fundamentally adversarial—in the nature of a prosecutor—while the City maintains that he served as the Board's attorney in an advisory capacity. It is, of course, fundamentally improper for an advocate to engage in off-the-record communications with a judge, or for the judge to consider matters not in the record. State v. Gokey, 2010 VT 80, ¶¶ 14-21, 188 Vt. 500. In evaluating taxpayer's claim that the assistant city attorney engaged in improper ex parte communications with the Board, the trial court implicitly accepted taxpayer's characterization of the assistant city attorney's role, but found no impropriety. For purposes of resolving the claims on appeal, we adopt the same approach.

On appeal, taxpayer renews her claim that she was denied her "due process rights . . . given [the] ex parte conversations between the counsel for the City and the Board" and that the Board "was biased or predisposed against [taxpayer] in light of the ex parte communications."[3] Our review is limited. As we have held, review of municipal abatement decisions by the superior court is normally on the record, and we apply the same standard as the trial court in appeals to this Court. Garbitelli v. Town of Brookfield, 2011 VT 122, ¶¶ 9, 14, 191 Vt. 76. Thus, review of evidentiary findings by the Board is limited to "whether there is any competent evidence" to support them, id. ¶ 6 (quotation omitted), and we "review the Board's decision denying abatement for abuse of discretion." Id. ¶ 14. Questions of law we review de novo. Id. ¶ 5. We have also recognized, however, that the trial court may, as here, take additional evidence to supplement the record, id. ¶ 9, in which case we will defer to the trial court's findings as to the evidence and testimony taken by the court in the first instance.

Here taxpayer's appeal focuses on the process by which the abatement proceeding was conducted, and taxpayer calls upon this Court to determine "what process is due" in the context of an abatement hearing, and whether the proceedings afforded that due process. See, In re Miller, 2009 VT 122, ¶ 13, 186 Vt. 505 (recognizing that the requirements of due process vary depending on the nature of the proceeding). The due process question is normally a question of law, although to the extent that the claims rest on what actually occurred in connection with the hearing, we will defer to the trial court's findings.

In this case, the trial court rejected taxpayer's factual assertion that counsel for the City improperly discussed her case with members of the Board during the deliberation. The trial court's findings about what happened at the hearing are supported by substantial evidence in the record. The conversation between the assistant city attorney and Board member Wright appears to have lasted no more than a few seconds, and occurred during the Board's consideration of a completely separate and unrelated abatement proceeding. Both men then spoke shortly thereafter. Later, after taxpayer's hearing was reconvened, Board member Wright was one of a minority of members voting in favor of an amended motion to grant taxpayer a much more substantial abatement than she ultimately received. The trial court had an opportunity to listen to direct testimony concerning the alleged ex parte conversations, and was in a position to evaluate the witnesses' credibility. See Begins v. Begins, 168 Vt. 298, 301 (1998) (noting that we defer to court's findings "[g]iven its unique position to assess the credibility of witnesses and weigh the evidence"). Given this evidence, the trial court's finding that there were no improper ex parte communications between the assistant city attorney and members of the Board is not clearly erroneous.

_____

[3] In the statement of facts set forth in her opening brief, taxpayer also asserts—without any citation to the record or legal argument and authority—that the City "acted unconscionably" and used its "superior position to exploit" her. We do not consider these claims to be sufficiently briefed or argued to warrant consideration on appeal. See Johnson v. Johnson, 158 Vt. 160, 164 n.* (1992) (declining to consider claims so inadequately briefed as to fail to meet the standards of V.R.A.P. 28(a)(4)). Taxpayer also argues that the board was predisposed against her, given the ex parte communications and prior history of the abatement process prior to remand. To the extent this argument rests on the claim of improper ex parte communications, we reject it for the reasons set forth above. To the extent taxpayer argues that the Board was otherwise improperly biased against her, taxpayer fails to identify with specificity the basis for her claim, and we decline to speculate.

Accepting these findings, we agree with the trial court that the abatement hearing process did not violate taxpayer's fundamental rights. We need not address taxpayer's legal arguments that the alleged improper communications violated her due process rights because the record supports the trial court's conclusions that the alleged improper communications did not actually occur. Accordingly, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Thomas A. Zonay, Superior Judge,
Specially Assigned