STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 114-11-18 Vtec

| Hinesburg Hannaford SD |
|---|

## ENTRY REGARDING MOTION

Count 1, Municipal DRB Subdivision (114-11-18 Vtec)

Title:            Motion for Dismissal and/or Clarification of SOQ (Motion 1)

Filer:            Martin's Foods of So. Burlington

Attorney:         Christopher D. Roy

Filed Date:       December 21, 2018

Response in Opposition filed on 01/07/2019 by Attorney James A. Dumont for Appellant Responsible Growth Hinesburg

**The motion is GRANTED IN PART and DENIED IN PART.**

Martin's Foods of South Burlington, LLC, (Hannaford) seeks subdivision revision approval for Lot 15 of the Commerce Park subdivision in Hinesburg, Vermont, as part of its efforts to construct a 36,000-square-foot Hannaford grocery store at that location. Specifically, Hannaford applies to reduce the 75-foot and 30-foot setbacks defined in the 1987 subdivision plat to correspond with the 25-foot and 10-foot setbacks currently prescribed by the Town of Hinesburg Zoning Regulations.[1] The Town of Hinesburg Development Review Board (DRB) approved the subdivision revision in an October 17, 2018 decision.[2] A group of Hinesburg residents (Neighbors) appealed the approval. Neighbors timely filed their Statement of Questions, consisting of three questions, on December 4, 2018. In the motion presently before the Court, Hannaford requests that we dismiss or require a restatement of Neighbors' Question 1. Hannaford also moves to dismiss Questions 2 and 3.[3]

---

[1] The long history of this case is described in In re Hinesburg Hannaford Act 250 Permit, in which the Vermont Supreme Court denied Hannaford's previous application for site plan approval because of the 75-foot setback established by the 1987 subdivision approval. 2017 VT 106, ¶¶ 1-10, 14-22.

[2] Hannaford also submitted an application for site plan approval alongside its subdivision revision application. The DRB issued its conclusions on both applications on the same day in separate decisions. The DRB's denial of site plan approval is before this Court in an independent docket. See Hinesburg Hannaford SP Application, No. 112-10-18 Vtec.

[3] Questions 1 and 2 of Neighbors' Statement of Questions contain multiple subparts. Question 1 (subparts A through C) generally asks whether Hannaford's application meets the permit amendment standards described in In re Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 66, 199 Vt. 19, and In re Stowe Club Highlands, 166 Vt. 33, 38-39 (1996). See In re Hildebrand, 2007 VT 5, ¶ 12, 181 Vt. 568 (applying the Stowe Club Highlands factors developed under Act 250 to the amendment of a municipal subdivision permit). Question 2 (subparts A through M) is generally concerned with whether the application meets specific subdivision requirements in the Hinesburg Subdivision Regulations. Question 3, which has no subparts, asks "[w]hether it is no longer necessary to have a 75-foot setback in order to

Statements of Questions limit the issues that this Court can hear on appeal and appellants may not raise any question outside of the statement as filed. See V.R.E.C.P. 5(f); see also In re Garen, 174 Vt. 151, 156 (2002). Along with limiting the scope of the appeal, Statements of Questions fulfill the related function of notifying the opposing parties, and this Court, of the issues to be resolved. In re Atwood Planned Unit Development, 2017 VT 16, ¶ 14, 204 Vt. 301 (citations omitted).

We now consider Hannaford's challenges to each of the Neighbors' questions in turn. Hannaford first argues that this Court should dismiss or require clarification of Question 1 because it misstates the standard governing the amendment of subdivisions described in In re Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 66, 199 Vt. 19.

This argument misunderstands the nature of the Statement of Questions. The appropriate legal standard applicable to a given set of facts is a legal question decided by this Court, not an appellant's Statement of Questions. See, e.g., Garbitelli v. Town of Brookfield, 2011 VT 122, ¶ 5, 191 Vt. 76 (defining the applicable legal standard as a question of law decided by the trial court). Instead, the Statement of Questions informs the opposing parties and this Court of the relevant issues on appeal. Judging by the depth of the analysis in Hannaford's motion, Neighbors' Statement of Questions has accomplished this goal. The concerns Hannaford raises regarding the appropriate standard will be heard by this Court at a later stage in the proceeding. Hannaford's motion to dismiss Question 1 is **DENIED**.

Hannaford next argues that Question 2 should be dismissed in its entirety because the Question's subparts implicate subdivision application requirements and design standards that Hannaford claims are not applicable to its limited amendment request. Neighbors argue that Question 2 validly raises the wider range of subdivision requirements because even when an applicant only seeks to amend one aspect of a subdivision permit, the Court must evaluate the entire subdivision permit anew as if there was no prior permit. Alternatively, Neighbors argue that at least some of Question 2's subparts raise issues that are relevant to the modified setback proposed by Hannaford.

The question presented is whether an application for the amendment of a subdivision that only proposes to modify setbacks in one lot of the subdivision, without changing any lot lines or the lot coverage requirement, is subject to the full set of review requirements in the Town's Subdivision Regulations.[4]

Both this Court and the Vermont Supreme Court have discussed "the clear policy reasons favoring the finality of decisions of appropriate municipal panels and officers . . . ." In re Hildebrand, 2007 VT 5, ¶ 11, 181 Vt. 568 (citation omitted). Pursuant to 24 V.S.A. § 4472, interested persons who wish to dispute a municipal decision, including subdivision permit conditions, must appeal that decision to the relevant municipal panel or to the Environmental Division. 24 V.S.A. § 4472(a); see also Hildebrand, 2007 VT 5, ¶ 11. Otherwise, the decision and

---

serve the stated purpose of the 75-foot setback—protection of the water quality and shoreline of the canal, and protection against flooding."

[4] This is a question that the Subdivision Regulations themselves do not answer. Section 7.7 of the Subdivision Regulations provides for changes to recorded plats. This section requires resubmission of any changes to the DRB but does not define the extent or method of review. See 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g) (requiring this Court to apply the same substantive standards that were applicable to the municipal tribunal below). Further, "[t]here are no statutory standards that an amendment to a zoning permit or condition must meet . . . ." Lathrop, 2015 VT 49, ¶ 56. Thus, we must turn to the relevant case law for guidance.

any conditions it establishes becomes final, binding, and impervious to collateral attack in any subsequent proceeding. 24 V.S.A. § 4472(d); Lathrop, 2015 VT 49, ¶ 55. The requirement set out in § 4472 "underlies all preclusion rules in zoning cases." Lathrop, 2015 VT 49, ¶ 54.

This rule of finality is not absolute. Instead, the permitting system also embraces the competing value of flexibility. See In re Waterfront Park Act 250 Amendment, 2016 VT 39, ¶ 11, 201 Vt. 596. Thus, even though the permit conditions in an unappealed decision "may no longer be challenged, they may be amended in appropriate circumstances." Hildebrand, 2007 VT 5, ¶ 11.

In In re Champlain Parkway Wetland Conditional Use Determination, the Vermont Supreme Court considered the Agency of Natural Resources' decision to extend the expiration date on a permit approving a City of Burlington construction project. 2018 VT 123, ¶ 1. The Supreme Court concluded that the decision to extend did not implicate other conditions of the permit. Id., ¶ 29. Based on the principles of finality described above, the Supreme Court determined that these other permit conditions were final and binding decisions that could not be collaterally attacked because they were not implicated by the extension decision. Id., ¶¶ 30-31; see also In re Unified Buddhist Church, Inc., 2006 VT 50, ¶ 13, 180 Vt. 515 (applying precedent expounding the finality rule from the municipal permit context to permits issued by the Agency of Natural Resources). Because the appellant's challenges to these other permit conditions were "not relevant to the limited scope of the extension request determination" and "collateral to the matter at hand," the Supreme Court did not consider them. Id. Applying the same rationale, the Supreme Court affirmed this Court's decision to dismiss a number of the appellant's questions because they strayed outside the limited scope of the extension determination. Id., ¶ 32.

The same considerations of finality and flexibility apply to this Court's evaluation of the validity of Question 2. The underlying 1987 subdivision approval became final and binding when it was not appealed. 24 V.S.A. § 4472(d). The aspects of that decision that are not affected by Hannaford's proposed revisions cannot now be collaterally attacked. Here, by raising the full gamut of subdivision review requirements, Neighbors attempt to unsettle certain conditions established in the unappealed 1987 subdivision approval.[5]

Hannaford's request for an amendment, however, necessarily implicates certain regulatory requirements that can serve as a basis for Neighbors' appeal. Hannaford proposes to modify the setbacks of the 1987 subdivision approval. Thus, Neighbors are entitled to base their appeal on the subdivision requirements relevant to this adjustment.

---

[5] As mentioned above, in Lathrop, the Vermont Supreme Court set out the standards governing the amendment of permits. 2015 VT 49, ¶ 66. Neighbors argue that Lathrop requires an entirely new review when an applicant applies for a permit amendment. See Id. (stating that if there is a previous permit with final and binding conditions, and the application for an amendment proposes a "substantial change" from that previous permit, the "review should proceed as if there is no prior permit."). Undoubtedly, if an applicant returns to the drawing board with its proposal and submits an unrecognizable amendment application to the municipal panel, the application should be subject to full review. Lathrop, however, also states that "the applicant can indicate that any changes are not substantial and, if the board or court agrees, proceed to the third step" of assessing the permit amendment against the standards set forth in Hildebrand. Id., ¶ 66 n.18. Thus, Lathrop contemplates permit amendments that do not overhaul the whole project or require an entirely fresh review. By applying for the subdivision revision, Hannaford invited challenges to its amendment, not to the underlying conditions of the 1987 subdivision approval. Neighbors are not now exempted from the finality requirements of § 4472.

Because the lot lines and lot configuration will not change, and both are final and binding pursuant to the 1987 subdivision approval, submission of a sketch plan or master plan is not relevant to Hannaford's revision application. Further, none of the subdivision's design elements will change, though Neighbors have represented that a reduction in the 75-foot setback could have implications for stormwater management. For this reason, the subparts of Question 2 relating to the Subdivision Regulations' stormwater requirements are potentially relevant to Hannaford's proposed amendment. Accordingly, we conclude that subparts D through J of Question 2, along with subpart M, address concerns with the proposed subdivision that may not be precluded by § 4472. The remaining subparts of Question 2 (A, B, C, K, and L) raise issues outside of the scope of the amendment and are **DISMISSED**.

Lastly, Hannaford asserts that this Court should dismiss Question 3 because it merely restates Question 1(C) in different terms. Neighbors do not argue otherwise. Question 3 and Question 1(C) both ask whether Hannaford's application meets the standards in Hildebrand. While Question 3 may ask the question in a more specific way, we conclude that Question 1 fully incorporates Question 3. Accordingly, Question 3 is **DISMISSED** and we will interpret Question 1(C) to incorporate the issue presented in Question 3.

As described above, Question 1 of Neighbors' Statement of Questions identifies the issues on appeal and does not define the specific legal standard this Court will apply. Accordingly, this Court declines to dismiss the Question or any of its subparts. Parts of Question 2 raise issues decided in the 1987 subdivision approval that cannot be collaterally attacked. Accordingly, subparts A, B, C, K, and L of Question 2 are **DISMISSED**. The remaining subparts of Question 2 relate to subdivision requirements that may be implicated by Hannaford's present application. These subparts—D through J, and M—remain properly before the Court. Finally, Question 3 is **DISMISSED** because it reiterates the concern expressed in Question 1(C). Therefore, Hannaford's motion to dismiss or clarify Neighbors' Statement of Questions is **GRANTED IN PART** and **DENIED IN PART**.

So ordered.

Electronically signed on February 15, 2019 at 11:39 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
James A. Dumont (ERN 1948), Attorney for Appellant Mary Beth Bowman
James A. Dumont (ERN 1948), Attorney for Appellant Ken Brown
James A. Dumont (ERN 1948), Attorney for Appellant Jedidiah Burack
James A. Dumont (ERN 1948), Attorney for Appellant Dark Star Prop. LLC
James A. Dumont (ERN 1948), Attorney for Appellant Deirdre Erb
James A. Dumont (ERN 1948), Attorney for Appellant Geoffrey Gevalt

James A. Dumont (ERN 1948), Attorney for Appellant Catherine Goldsmith
James A. Dumont (ERN 1948), Attorney for Appellant Deborah Goudreau
James A. Dumont (ERN 1948), Attorney for Appellant Lindsay Hay
James A. Dumont (ERN 1948), Attorney for Appellant Carol Jenkins
James A. Dumont (ERN 1948), Attorney for Appellant Jean Kiedaisch
James A. Dumont (ERN 1948), Attorney for Appellant Rachel Kring
James A. Dumont (ERN 1948), Attorney for Appellant Natacha Liuzzi
James A. Dumont (ERN 1948), Attorney for Appellant William Marks
James A. Dumont (ERN 1948), Attorney for Appellant Richard Palieri
James A. Dumont (ERN 1948), Attorney for Appellant Chuck Reiss
James A. Dumont (ERN 1948), Attorney for Appellant Heidi Simkins
James A. Dumont (ERN 1948), Attorney for Appellant Michael Sorce
James A. Dumont (ERN 1948), Attorney for Appellant Stephanie Spencer
James A. Dumont (ERN 1948), Attorney for Appellant Responsible Growth Hinesburg
Christopher D. Roy (ERN 1352), Attorney for Appellee Martin's Foods of So.Burlington
David W. Rugh (ERN 1507), Attorney for Interested Person Town of Hinesburg
Interested Person Gill B. Coates
Peter G. Raymond (ERN 8814), Attorney for Interested Person Austin Properties, LLC